PATRICK FALCONER et al., Respondents, *v.* THE BUFFALO AND JAMESTOWN RAILROAD COMPANY et al., Appellants.

THE BUFFALO AND JAMESTOWN RAILROAD COMPANY, Appellants, *v.* WALTER J. WEEKS et al., Commissioners, etc., Respondents.

On the first day of January, 1875, when the amendment of the Constitution (Art. 8, § 11) went into effect, which prohibits any town from loaning its money or credit in aid of any corporation, or from becoming the owner of any stock or bonds of a corporation, all action on the part of any town to issue its bonds in aid of a railroad not then completed, at once became nugatory, unless where, by operation of law, or by some valid agreement, there had been, prior to that time, created a right to have such action perfected by the issuing of bonds.

Under the town bonding act, as amended in 1871 (§ 1, chap. 925, Laws of 1871), the tax-payers of a town, in their petition, were authorized to impose as a condition precedent to the subscribing for stock and the delivery of the town bonds, that the road should be located and constructed through the town, or a specified portion thereof.

Where such a condition was imposed by the petition, *held*, that the commissioners appointed to subscribe for the stock and issue town bonds were subjected to the condition, they could neither issue the bonds nor subscribe for or take stock, or by an agreement bind the town until the condition was fully complied with.

The commissioners could not substitute an agreement by the railroad company to comply with the condition, or any other agreement on its part for actual compliance; and, until such compliance, they had no authority whatever to act in any manner.

*County of M.* v. *Savings Bank* (2 Otto, 631), distinguished.

The provision of the act of 1870 (chap. 507, Laws of 1870), authorizing the railroad company and the commissioners to enter into a written agreement as to the delivery of the bonds and the purposes for which they were to be used, gave the commissioners no authority after the act of 1871 went into effect, to make any such agreement, where such a condition precedent had been imposed, until it was complied with.

Accordingly, *held*, where commissioners appointed upon a petition containing such a condition, entered into an agreement with the railroad corporation, that, when the road was located and constructed as required, they would immediately subscribe for stock and pay therefor in the town bonds, and the corporation agreed to receive the subscription and accept the bonds in payment; where the commissioners subscribed the bonds, and delivered them to third parties, to be delivered to the cor-

poration upon performance of the condition by a specified time, and where the condition had not been performed and complied with prior to the going into effect of said constitutional amendment, that the power to issue the bonds thereupon ceased; that the corporation had acquired no right thereto, and could not, upon a subsequent compliance with the condition, compel a delivery thereof; and that the bonds executed were nugatory and void.

(Argued March 29, 1877; decided May 22, 1877.)

THE appeal in the action first above entitled was from a judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiffs, entered upon an order overruling a demurrer to plaintiffs' complaint.

The appeal in the action secondly above entitled was from a judgment of said General Term in favor of defendants, entered upon a case submitted under section 372 of the Code. (Reported below, 7 Hun, 499.)

The question presented in and by both actions was as to whether Walter J. Weeks and others, commissioners of the town of Ellicott, Chautauqua county, appointed in proceedings under the act chapter 907, Laws of 1869, to issue bonds of said town in aid of the Buffalo and Jamestown Railroad Company were authorized and required to subscribe for stock of said corporation, and to deliver the bonds of the town in payment therefor.

The petitions signed by the tax-payers of said town upon which said proceedings were based contained this clause:

"Your petitioners desire that the said town of Ellicott shall create and issue its bonds to the amount of two hundred thousand dollars, and invest the same or the proceeds thereof in the stock of The Buffalo and Jamestown Railroad Company, upon the conditions that the line of the railroad of said company, to be constructed from the city of Buffalo to the line of the State of Pennsylvania in said county, shall be located and constructed through the village of Jamestown, in said town of Ellicott, before said bonds shall be delivered to said company or sold."

The order of the County Court appointing the commissioners recited this condition, and the commissioners were appointed for the purposes named in the petition.

The commissioners made no formal subscription to the stock of the railroad company, but on the 14th of June, 1872, a written contract was entered into between them and the company, whereby the commissioners agreed that when the railroad company should have performed the condition aforesaid, they, as such commissioners, or their successors in office, would thereupon immediately subscribe, in the name of the said town of Ellicott, to the capital stock of said company, to the amount of $200,000, and pay for the same by delivering the bonds of said town in the same amount ; and the railroad company agreed to receive said subscription and to receive said bonds in payment thereof. The agreement contained this clause :

" The parties of the first part, the commissioners, refer to the petition and proceedings under which they were appointed such commissioners as aforesaid, and do not undertake or agree to perform the conditions of this contract, except as they are empowered and authorized so to do by said petition and proceedings, and the statute in such case made and provided."

In August, 1874, the commissioners executed bonds prepared in the form prescribed by said agreement, and, at the request of the railroad company, delivered them to Robert Newland and Augustus F. Allen, taking from them a receipt which stated in substance that they were placed in their hands to be delivered to the railroad company in case it did, before January 1, 1876, construct its railroad through the village of Jamestown, in the manner specified, and upon the commissioners subscribing for the stock and receiving certificates therefor. In case the road was not so constructed, the bonds were to be returned to the commissioners.

The company did not perform the condition aforesaid until October, 1875; meantime and on the 1st of January, 1875, the amendment to article 8 of the constitution of this State, prohibiting any town from becoming, directly or indirectly,

the owner of stock in any association or corporation, went into operation. (Const., art. 8, § 11.)

After performance, the railroad company requested the commissioners to subscribe for the stock and demanded the bonds, which was refused.

*George F. Comstock,* for the appellants. The operation of the amendment to the State constitution, which went into effect January 1, 1875 (art. 8, § 11), was only prospective. (*County of Moultrie* v. *Rockingham Ten Cents Savings Bank,* 2 Otto, 631; 7 J. R., 477; 23 Wend., 482; 24 N. Y., 20; 43 id., 130; 7 Hill, 156.)

*R. P. Marvin,* for the respondents. The facts stated in the tax-payers' petition did not give jurisdiction to the county judge. (Laws of 1869, chap. 907, § 1; Laws 1871, chap. 925, § 1; *People ex rel. Rogers* v. *Spencer,* 55 N. Y., 1; *Stephens* v. *Fairchilds,* 3 Com., 41.) The commissioners had no right to deliver or sell the bonds until the road had been located and constructed through Jamestown. (2 Pars. on Con., 6, § 2, 11; § 3, pp. 10, 12.) . There was no question of vested rights in this case. (*Fisher* v. *Peck,* 6 Cranch, 87–133; *Dart. College* v. *Woodward,* 4 Wheat., 518; *Watson* v. *Mercer,* 8 Pet., 88–110; *Balt. R. R. Co.* v. *Nesbit,* 10 How., 410; *Satterly* v. *Matthewson,* 2 Pet., 380, 413.) The contract under the act of 1870 (chap. 507) was put an end to by the repeal of that act. (Sedg. on Stat., 129–136; *Butler* v. *Palmer,* 1 Hill, 329; *Key* v. *Goodwin,* 4 M. & P., 341, 351.) The legislature has power to repeal charters and annul corporations formed under general laws in pursuance of the constitution of 1846. (*McLean* v. *Pennington,* 1 Paige, 102; *White* v. *Syr. and I. R. R. Co.,* 14 Barb., 559; *North. R. R. Co.* v. *Miller,* 10 id., 277; *Snydays* v. *Moore,* 8 id., 358; *Troy and Rut. R. R. Co.* v. *Kerr.,* 17 id., 603; *Wales* v. *Stilson,* 2 Mass., 146.) The bonds in question, if issued, will not be valid in the hands of innocent holders. (*Thomas* v. *City of Richmond,* 12 Wal., 356; *Pendleton Co.*

v. *Amy*, 13 id., 297–304; *Grand Chute* v. *Winnegar*, 15 id., 371; The Floyd Acceptances, 7 id., 667–676; *Mech. Bk.* v. *N. Y. and N. H. R. R. Co.*, 3 Kerr, 599.)   Plaintiffs, as tax-payers of the town of Ellicott, could maintain this action. (*Ayers* v. *Lawrence*, 59 N. Y., 192.)

FOLGER, J.   It is not in question, that since the adoption by the people of the amendments to the State constitution, no town can loan its money or credit in aid of any corporation, or become the owner of stock in any corporation, or incur any indebtedness, except for town purposes.   Those amendments were voted on by the people in November, 1874, and became a part of the constitution on the first day of January, 1875.

It is not to be questioned, that as soon as they became a part of the constitution, all action by towns, not yet finished, towards the issue of bonds in aid of any corporation, at once fell to the ground; unless there had by operation of law, or in pursuance of some authorized and valid agreement, been created a right to have such action perfected by the issuing of bonds.

In the case in hand, the town of Ellicott, or certain of the tax-payers thereof, had taken, or attempted to take action, for the issue of its bonds in aid of the Buffalo and Jamestown Railroad Company, and for the taking by the town of the stock of that corporation in exchange for those bonds.   Such action had not been completed by the issue of the bonds; and an important question in the case is, whether that corporation has acquired a right to have the bonds of the town issued and delivered to it.   It has not that right, unless it exists by reason of a certain agreement, alleged to have been made with it, by certain persons claiming to act as the authorized agents of the town.

To properly determine that question, it is necessary to see just what the action of the town or a portion of its tax-payers has been.

We will, for the present, assume that under the various

acts of the legislature relating to the bonding of towns in aid of railroad corporations, the town of Ellicott had authority to issue its bonds to the railroad corporation above-named.

The town, by the same acts, had authority to affix a condition to any power given by it to its agents in the matter; (Laws of 1871, vol. 2, chap. 925, p. 2115.) It did affix the condition, that the line of that railroad company should be located and constructed through the village of Jamestown, before the bonds of the town should be delivered to that company. The meaning and effect of which condition is, not merely that the route of the road of the company should be determined upon by the directors, but that, also, the track, the road itself, should be made through that village. Nor was this a condition, merely to be annexed to the delivery of the bonds to the company, leaving the compliance with it to depend upon the good faith of the company, or its ability to keep and perform it. It was a condition precedent to the delivery. The route must first be adopted, and the track or road first be laid, before the bonds of the town could be delivered forth from the hands of its agents.

Assuming that all the proceedings up to that time taken were regular and valid, this was the end of the action of the tax-payers and the permanent officials. After that, all that was to be done was by the actors for the town, the commissioners appointed by the county judge. As such actors, their power was express and limited. It is well to notice how limited and express is the authority given. The judgment or order of the county judge appoints Weeks and others, some of the respondents, commissioners for the purposes mentioned in the petition of the tax-payers. That purpose is stated in that petition to be, " to create and issue its bonds, and invest the same or the proceeds thereof in the stock of the railroad company, upon the conditions that the line of the railroad * * * be located and constructed through the village of Jamestown * * * before said bonds shall be delivered to said company or sold."

Here is the grant of power from the tax-payers, through

the county judge, to the commissioners.  It confers nothing more than is expressed, or than is necessarily incident to that which is expressly conferred, or is given by statute law in addition thereto.  The town having a right to annex a condition to its authority to issue the bonds and take the stock, the commissioners were subjected to that condition, and could not create and issue bonds otherwise than in strict accordance with it.  Hence, they could not create and issue them, until the railroad company had fixed the line of its road, and had made the track thereof through the village of Jamestown.

The commissioners had no authority to take stock, in any manner; nor in any manner to subscribe for stock; nor, by any agreement, to bind the town to issue its bonds, and to take or subscribe for stock; until that condition was complied with by the company.  An agreement by that company to comply with it was not a compliance; and the commissioners could not substitute an agreement by it to comply, or any other agreement by it, for actual compliance, or take and rest upon such agreement in advance of actual compliance. An agreement by the railroad company to comply with the condition, or to do aught else contained in the instrument hereinafter noticed, was a promise to do nothing, which it must not do, before it could have the bonds.  Nay, more, so far as yet appears herein, compliance with the condition must be made by the company, before the authority of the commissioners to act at all came into existence.  They had no right to take stock until the road was constructed through the village of Jamestown; nor had they the right to make an agreement in the matter, though it was an agreement not to issue the bonds and not to take the stock until then, and an agreement then to issue them.  The majority of the taxpayers of the town had the power to affix to their petition or consent such a condition.  Assuming that the proceedings were regular and valid, such condition was in fact affixed, and at once became an important, nay, a dominant, part of the consent.  In the absence of authority to contract to issue

the bonds; and a contract by the company to comply with condition or to do aught else, being a promise to do nothing which it must not do, before having any claim for an issue of the bonds; no right to have an issue of them could be created, by any agreement in form between the commissioners and the company; (*Town of Concord* v. *Savings Bank*, 2 Otto, 625.) The case of *Co. of Moultrie* v. *Savings Bank* (2 Otto, 631), is not parallel. There the supervisors were authorized to subscribe (that is, to agree to take the stock) at once, but were not obliged to issue the bonds until the road had reached a certain state of construction. In the case in hand, we find no authority to subscribe or to agree until the road was in a defined actual state.

It is suggested that there is no limitation upon the authority of the commissioners, whereby they are required to withhold the issuing of the bonds until after the condition shall have been performed; and that the only effect of making the petition conditional, is to impose a liability on the railroad corporation in case it accepts the subscription. But the statute of 1871 says, that the petition may be absolute or conditional. An absolute conveyance, an absolute right, an absolute estate, an absolute sale, is that which cannot be defeated or changed by any condition, restriction or limitation. So is an absolute petition. A conditional conveyance, and so on as above specified, is one which is restricted and limited by some condition, the non-performance of which will hinder it from operation and effect, if it be a condition precedent. So is a conditional petition. The petition itself, and the order of the county judge, as is herein shown, restrained the commissioners from action until the condition expressed in the petition had been satisfied, which might not be done by an agreement that it should be done.

So far, we have considered the question only upon the facts which we have already stated in the discussion. There is one other thing to be noticed. In 1870 the legislature passed an act, (Laws of that year, vol. 1, chap. 507, p. 1148), making it competent for any railroad corporation in whose

favor a town had authorized an issue of bonds, to agree with the town commissioners, so as to limit and define the times when, and the proportions in which, the bonds should be delivered to the corporation; and the place where, and the purpose for which, the bonds should be used; and providing that an agreement thereto, in writing, duly executed by both parties, should be valid in all courts and places.

After the passage of this act these commissioners, and the railroad company, executed an instrument, in writing, by which the commissioners professed to agree that, when the company should have located and constructed its proposed railroad through the village of Jamestown, the commissioners, or their successors, would immediately subscribe to the stock of the company, and make payment by a delivery of the bonds of the town; and the company professed to agree that it would receive the subscription and payment.

It will be observed that this instrument does not, in terms, bind the company to comply with the condition which the tax-payers had affixed to their consent or petition, though the acceptance of a subscription, limited by a condition, would hold the company to an observance thereof. It will be observed, also, that it does not profess to bind the commissioners to do any thing substantial, which was not already provided for by the consent or petition of the tax-payers and the order of the county judge.

It is the fact, too, that it was executed after the passage of the act of 1871 (*supra*), which gave to petitioning tax-payers of a town the power to affix to their consent such condition as was affixed in this case.

These three facts being kept in view, the question arises, was and is the instrument of any legal significance? Does it at all alter the relation of the parties, or add to the rights or duties of the company, or of the town?

Before the passage of the act of 1871, it may have been the judgment of the legislature that the petitioning tax-payers could not lawfully affix a condition to their consent. It is not needful to consider whether this was well founded. It

is quite likely that consents had been given, in some cases, without any condition having been in terms annexed. Hence the law of 1870 (*supra*) was conceived to be necessary, and to be of practical importance, so that the parties could establish to each other the relations and obligations contemplated by that act. And in legislative view, in case of a petition without condition, the benefits of the act of 1870 might still be needed and sought, though the act of 1871 was in existence.

In view of the power given by the act of 1869, (Laws of that year, vol. 2, chap. 907, p. 2303, §§ 4, 5), to commissioners, and the duty put upon them, with all reasonable dispatch to make the bonds, and to subscribe for the stock, it was wise legislation to enable them, as did the act of 1870, to stipulate for the performance of conditions by the railroad company before they acted to the binding of the town. But it may not be said that since the act of 1871, and in the face of a conditional petition, the commissioners might, with just regard to their duty, issue bonds and take stock before the performance of the condition of the petition.

After the passage of the act of 1871 (*supra*), the importance of the act of 1870 was nothing in cases of a conditional petition. The tax-payers could then give their consent, and could so limit and control the operation of it as effectually to establish and guard the rights of the town. By it they could confer upon their agents, the commissioners, so restricted and well defined a power, as to make them no more than the merest ministerial actors, so far as the issuing and delivery of the town bonds was concerned. No room was left for an agreement by them, because there was no need of an agreement; and hence no power was given to enter into one. An agreement to subscribe is an actual subscription, says the learned counsel for the appellants, resting upon 2 Otto (*supra*), as an authority. Though this is not always conceded in its full extent, (see *Hedge & Horn's Appeal,* 63 Penn. St., 273), if it be here granted, surely there was no authority to the commissioners actually to sub-

scribe before the condition had been met by the company. On the other hand, the petition of the tax-payers having been adjudicated upon by the county judge, and the commissioners of the town · appointed by him, with power to issue and deliver the bonds upon the fulfillment of the condition precedent by the railroad company, the latter needed no farther agreement or obligation; and hence the form of taking one was of no legal or practical consequence, and availed not to strengthen any existing right, nor to create a new one. It is not able to escape notice, that the parties who executed this instrument were not sure of the ground they seemed to stand upon. There is in it a saving clause, or a clause of protection to the commissioners. It refers to the petition and the proceedings under which they were appointed. The effect and force of the instrument is in express terms limited by the scope of the power and authority conferred by that petition, and the proceedings and the statute in such case made and provided. Nor does it matter that, in fact, the commissioners did prepare and sign in form of office some · bonds; and, at the request of the railroad company, deliver those papers to three persons, and take from them a written declaration of the terms and conditions on which they were to hold and dispose of them. Surely there is no power of that kind given in the petition or judgment or statute. Nor could the recipients of those papers acquire by that action any more power to deal with them to the binding of the town than the commissioners had. So that the town of Ellicott and the Buffalo and Jamestown Railroad Company stood towards each other, at the time the amendment to the constitution took effect, in just such relations, and with just such rights and duties, as were created and imposed by statute law, and none other. The agreement did not add to nor affect them. It was of no avail. The railroad company had power to go on and determine its route and lay down its track through the village of Jamestown, and thus perform the condition precedent upon which it was to become entitled to have and demand the bonds of

the town. The town could lie by until the railroad company had in a reasonable time complied with the condition, when, through its agents, it could perhaps make and issue the bonds in such reasonable and not unusual form and terms as they deemed fit.

Before compliance with the condition was made, and before the exercise by the town of its statutory power, came in the inhibition of the amended constitution, annulling the statute authority to the town. Then the power to issue bonds and take stock no longer existed.

It follows that the railroad company has no right to compel, or have or demand the issue of the bonds, and that the town may not become a stockholder in that company.

There are several other questions of interest made by the papers; but as the result above reached leads to an affirmance of the judgment of the General Term, we do not tarry to consider them.

All concur; ANDREWS, J., in result; RAPALLO, J., absent.

Judgment affirmed.