# NORTON *v.* BOARD OF COMMISSIONERS OF THE TAXING DISTRICT OF BROWNSVILLE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF TENNESSEE.

No. 1442. Submitted January 4, 1889. — Decided March 5, 1889.

A valid power to issue its bonds in aid of railroads, conferred upon a municipal corporation of Tennessee by a statute of that State enacted while the constitution of 1834–5 was in force, not having been accepted and acted upon by the corporation at the time when the constitution of 1870 came into operation, became subject to the conditions and prohibitions of article 2, § 29 of that instrument, and could not be exercised without further legislation in conformity therewith.

The substitution of a new state constitution for an old one abrogates the latter, and if the former contains provisions from the old constitution, with changes and additions, such provisions are not to be treated as ordinary legislation in amendment of prior statutes.

A clause in a new state constitution, designed to keep in force all laws not inconsistent with the instrument will not perpetuate a previous law, enabling a municipality to do, under certain circumstances, that which the new constitution forbids to be done, except under other circumstances.

THE case as stated by the court was as follows:

Plaintiff in error brought suit in the Circuit Court of the United States for the Western District of Tennessee against the Board of Commissioners of the Taxing District of the City of Brownsville, Tennessee, and the president, treasurer, secretary and financial agent of that board, upon certain interest coupons annexed to bonds issued by the city of Brownsville, July 1, 1870. The cause was tried upon an agreed statement of facts, as follows:

The city of Brownsville was incorporated by act of the General Assembly of Tennessee passed on February 24, 1870.

The records of the board of mayor and aldermen show the following proceedings had May 12, 1870:

"BROWNSVILLE, TENNESSEE, *May* 12, 1870.

"A call-meeting of the board of mayor and aldermen met at the mayor's office. Members being all present, the board

was called to order. Reading the minutes of the last meeting was dispensed with. Upon application of J. D. Smith, president of Brownsville and Ohio Railroad Company, and in pursuance of authority in us vested by the act of General Assembly of State of Tennessee passed February 8, A.D. 1870, the board of mayor and aldermen of the city of Brownsville hereby order and direct that an election be held in our said city on Saturday, the 11th day of June next, at which election the qualified voters of our said city will vote upon the proposition to issue the bonds of the corporation to be subscribed as stock in aid of the Brownsville and Ohio Railroad, and in accordance with the provisions of said act, said bonds to have twenty years to run, and be payable in city of St. Louis, Missouri, and bear interest at the rate of eight per cent per annum, said interest payable annually in said city, and said bonds to be issued to amount to the sum of fifty thousand dollars, and be known as Brownsville railroad bonds. Said election is to be advertised in the Brownsville *Bee*, the county newspaper of Haywood County, for twenty days before said election. Said bonds are to be issued to and taken by the Brownsville and Ohio Railroad Company in lieu of the sum of fifty thousand dollars heretofore voted and subscribed by this corporation to the said company in pursuance of § 6 of said act of General Assembly of State of Tennessee of February 8, 1870. In voting at said election those voters who are in favor of the issuance of said bonds in lieu of said subscription shall have written or printed upon their ballots 'bonds,' and those who are opposed to the issuance of said bonds shall have written or printed on their ballots 'no bonds.' It is ordered that the sheriff of Haywood County give notice by advertisement in the Brownsville *Bee* for twenty days of the time, place, and purpose of holding said election, and shall open and hold the same at the usual voting place or places in the city of Brownsville on Saturday, June 11, 1870, and shall, as soon thereafter as practicable, certify the result of said election to this board. Full power and authority is hereby given him to appoint judges and other officers of said election, and to do all things else necessary and proper to carry into effect this order."

On the 13th day of June, 1870, the sheriff of Haywood County, Tennessee, certified to the mayor and aldermen of the city of Brownsville that he did hold the election thus ordered in conformity to the terms of the order on the 11th of June, 1870, and that at said election one hundred and thirty-nine votes were polled, and the result was one hundred and thirty-nine votes were cast for "bonds" and none for "no bonds."

And on the said 13th day of June, 1870, the said mayor and aldermen of the city of Brownsville did ordain as follows:

"On motion, the following ordinance was adopted, to wit:

"Whereas it appears from the certificate of Jno. L. Sherman, sheriff of Haywood County, that in pursuance of an ordinance of this board passed 12th of May, 1870, that he did, on the 11th of June, 1870, open and hold an election within the city of Brownsville upon the proposition to issue fifty thousand dollars corporation bonds running twenty years, bearing interest from date at eight per cent per annum, payable in the city of St. Louis, Missouri, said bonds to be known as the Brownsville Railroad bonds, and to be issued in aid of the construction of the Brownsville and Ohio Railroad, and that at said election one hundred and thirty-nine votes were cast in favor of said bonds and none against, it is therefore ordained by the board of mayor and aldermen of the city of Brownsville that the mayor, T. W. Tyus, subscribe to the Brownsville and Ohio Railroad Company the sum of fifty thousand dollars as stock, and that in payment of said subscription he sign and issue to said Brownsville and Ohio Railroad Company fifty thousand dollars corporation bonds, said bonds bearing interest from date at the rate of eight per cent per annum, payable in the city of St. Louis, Missouri, twenty years from date, said interest to be paid annually, said bonds to be issued in aid of the construction of said Brownsville and Ohio Railroad, and to be known as the Brownsville Railroad bonds."

On the first day of July, 1870, fifty thousand dollars of the bonds of the city of Brownsville were issued under and in pursuance of the foregoing proceedings, payable July 1, 1890, and the same were by said city of Brownsville paid and delivered to the Brownsville and Ohio Railroad Company in payment of

a subscriptio ᵢheretofore made by said city of Brownsville for fifty thousand dollars of the capitaᵢ stock of said railroad company, and said stock so paid for was delivered by said railroad company to said city of Brownsville and has ever since been held and owned by said city.

The following is a correct copy of one of the said fifty thousand dollars of bonds, and the others are like unto it :

> " $500.          . United States of America.          $500.
> " City of Brownsville, State of Tennessee. .
> " Brownsville Railroad Bond.
> " Interest at eight per cent, payable annually.

"Know all men by these presents, that the corporation of the city of Brownsville, Tennessee, is indebted to the bearer of this bond in the sum of five hundred dollars, for value received, which the said corporation hereby promises to pay on the first day of July, in the year one thousand eight hundred and ninety, at the office or agency of said corporation, in the city of St. Louis, Missouri, with interest thereon from the first day of July, eighteen hundred and seventy, at the rate of (8) eight per centum per annum, payable annually, at the said office or agency, on the first day of July of each year, on the presentation and surrender of the annexed coupons as they severally become due. This bond is one of a series of one hundred bonds for five hundred dollars each, numbered from one to one hundred, inclusive, amounting in the aggregate to fifty thousand dollars, and issued by authority of an act of the legislature of the State of Tennessee, passed February 8, 1870.

"In witness whereof the city of Brownsville has caused these presents to be signed by its mayor and recorder this first day of July, 1870.

> "T. W. Tyus, Mayor.
> "John Clinton, Recorder."

G. W. Norton became the holder and owner for value before maturity, and without notice of any infirmity in said bonds other than that given him on the face of the bonds and by

the constitution and laws of Tennessee, of the interest coupons which matured July 1, 1874, taken from said bonds numbered 5, 7, 27 and 41, and the interest coupons which matured on July 1, 1883, 1884, 1885 and 1886, taken from said bonds numbered 27, 35, 41, 44, 62, 82, 83, 84, 85, 86, 48, 49, 55, 57, 58, 60, 90, 91, 95, 96, 97, 98, 99 and 100 being four coupons which matured July 1, 1874, for $40 each, and 24 coupons which matured July 1, 1883, and 24 which matured July 1, 1884, and 24 which matured July 1, 1885, and 24 which matured July 1, 1886, aggregating 100 coupons of $40 each, and upon these 100 interest coupons the said G. W. Norton, on the 20th of May, 1887, instituted his said suit against the Board of Commissioners of the Taxing District of the city of Brownsville in said Circuit Court of the United States for the Western District of Tennessee, being No. 2933 on the law docket of said court, which is the cause recited in the caption hereof, to be submitted to said court upon the pleadings and this agreement of facts.

The mayor and aldermen of the city of Brownsville, at a meeting of said board, held on March 18, 1871, took action, which is thus shown on the minutes of said board:

" On motion, the following ordinance was made and adopted:

" Be it ordained by the Board of Mayor and Aldermen of the city of Brownsville, Tennessee, That the Exchange Bank of St. Louis, in the State of Missouri, is hereby constituted and made the agency of the corporation of the said city of Brownsville, Tennessee, for the purpose of paying the principal and interest, as the same shall become due, of fifty thousand of eight per cent bonds issued by said corporation of Brownsville on the first day of July, 1870, and falling due on the first day of July, 1890; and the mayor is hereby authorized and instructed to collect promptly the taxes levied for the purpose of paying the interest on said bonds and for the purpose of establishing a sinking fund for the redemption of the same, and to place on deposit at the said Exchange Bank of the city of St. Louis by the 1st day of July of each and every year a sufficient amount in currency to redeem all of the coupons of said bonds falling due at that time and not otherwise redeemed."

The city of Brownsville paid the interest on said bonds for the years 1871 and 1872, and has paid the interest on some of them, matured since, for the years 1873, 1874, 1875, 1876 and 1877, but the coupons sued on as aforesaid by G. W. Norton in the case cited in the caption hereof have not been paid.

It is admitted that at an election for mayor of Brownsville, on January 7, 1871, there were 546 votes cast for mayor, and that on June 11, 1870, the citizens of Brownsville entitled to vote in the election held on that day were at least 546 in number. It is also admitted that the Brownsville and Ohio Railroad was never built, and has been abandoned.

· It is also admitted that by an act of 1879 the charter of the city of Brownsville was repealed, and that a government was afterwards organized under the act of April 1, 1881. All of these acts and others thought applicable may be read from the books containing the acts of Tennessee.

It is also admitted that there was no subscription by the authorities of Brownsville to the Brownsville and Ohio Railroad or to the corporation which preceded it, called the Brownsville and Dyer County Railroad, otherwise than is shown in the paper immediately following this agreement, before the passage of the act of February 8, 1870; and it is also admitted that no election was held as contemplated in the ordinance set out in said paper.

*Paper annexed to Agreement.*

"BROWNSVILLE, TENN., *May* 11, 1869.

"At a called meeting of the board of mayor and aldermen, held in the mayor's office, members were all present except Recorder Clinton. The board was called to order and Alderman B. J. Lea appointed recorder *pro tem.* The minutes of the last meeting were read and adopted. A communication was received from Messrs. R. S. Thomas (chairman), J. P. Wood, Jno. R. Watkins, J. M. Rutledge, W. W. Vaughn, D. A. Nunn, and J. P. Parker, praying the board to order an election to vote a tax on the property in the corporation, for the purpose of aiding in building the Brownsville and Dyer

County Railroad, which was received and ordered to be filed; and, on motion, the following ordinance was passed:

" 'Be it ordained by the board of mayor and aldermen, That the proposition for the board of mayor and aldermen to levy a tax of one per cent per annum for five years on the taxable property of Brownsville, to aid in the construction of the Brownsville and Dyer County Railroad, for which said tax the said railroad company is, after the last payment, to issue certificate of stock for the amount which is paid by the town of Brownsville, be submitted to the legal voters of Brownsville on the 18th day of May, 1869. Those in favor of said appropriation will vote " for railroad tax;" those opposed to said appropriation will vote " against railroad tax." ' "

The court instructed the jury that the bonds from which the coupons sued on were clipped were issued without the authority of law, and were void; and that the new constitution, which went into effect on the 6th day of May, 1870, did not amend, but repealed and abrogated the act of February 8, 1870, so far as said act authorized the issuing of bonds by municipal corporations upon an election held after said new constitution went into effect; and directed the jury to return a verdict for the defendants and against the plaintiff. To the giving of this instruction plaintiff then and there excepted. The jury returned a verdict for the defendants under this charge of the court.

Plaintiff then moved in arrest of judgment, and for a new trial, which motions were overruled; to all which holdings and rulings the plaintiff excepted and tendered his bill of exceptions, which was duly signed, sealed and made part of the record.

Judgment was rendered in favor of the defendants and against the plaintiff for costs, and he thereupon sued out this writ of error.

The act of the General Assembly of Tennessee of February 8th, 1870, so far as in any way relating to the city of Brownsville, is as follows:

"An Act to confer upon the town of Brownsville, in the county of Haywood, the authority to issue corporation bonds in aid of railroads, and for other purposes.

"Section 1. *Be it enacted by the General Assembly of the State of Tennessee,* That section 71 of an act passed the 15th day of February, 1869, or so much thereof as to change the name and style of the Brownsville and Dyer County Railroad to the Brownsville and Ohio Railroad which road shall run from Brownsville *via* Friendship, instead of Chestnut Bluff and Dyersburg, to some point in the State of Kentucky west of the Tennessee River, to be determined by said railroad company.

"Sec. 2. *Be it further enacted,* That the corporate authorities of the city of Brownsville, in Haywood County, are hereby authorized to issue corporate bonds to the amount of two hundred thousand dollars, for railroad purposes, to be called Brownsville Railroad Bonds, running not exceeding twenty years, and bearing interest, payable annually, not exceeding the rate of interest at the place where said bonds are made payable.

"Sec. 3. *Be it further enacted,* That the bonds authorized to be issued by this act, or any part thereof, may be subscribed as stock in the Brownsville and Ohio Railroad Company, said bonds to be taken by said company at par, and to issue to the corporation of Brownsville certificates of stock of said railroad company, equal to the amount of bonds received from said corporation,

"Sec. 4. *Be it further enacted,* That upon the application of the president of the Brownsville and Ohio Railroad Company to the corporate authorities of the city of Brownsville, said authorities shall publish or cause to be published in the county newspaper, not less than twenty days, for the purpose of holding an election, to be held in the usual way, in said city of Brownsville, at which election all the legal voters shall have the privilege of voting for or against the issuance of said railroad bonds; and, unless a majority of the votes cast at such election be in favor of the proposed issuance of rail-

road bonds, no authority shall be given by this act to issue the same; but, in case a majority of the votes cast be in favor of the issuance of said bonds, the mayor of the city shall subscribe to the stock of said railroad company the amount so voted; said stock to be paid in bonds, as provided for by this act.

"Sec. 5. *Be it further enacted,* That the corporate authorities of the city of Brownsville shall levy annually an assessment upon all the taxable property within the limits of the corporation, sufficient to pay the annual interest on the bonds that may be issued under the provisions of this act, and also to establish a sinking fund for the ultimate redemption of said bonds.

"Sec. 6. *Be it further enacted,* That a subscription in bonds made by the corporation of the city of Brownsville to the Brownsville and Ohio Railroad Company, under the provisions of this act, may be received in lieu of any other subscription, heretofore made by said corporation to said railroad company; and that the provisions of the foregoing sections of this act shall apply to the towns of Troy and Union City, in Obion County, to the same extent as the same applies to the city of Brownsville.

   *         *         *         *         *

"Sec. 18. *Be it further enacted,* That stock which has been subscribed, or may hereafter be subscribed, by any county, city, or incorporation, to said railroad companies, may be payable in six annual payments; and it shall be lawful for county courts and the corporate authorities of any city or town, making such subscription, to issue *short* bonds bearing interest at the rate of six per cent per annum, to said railroad companies, in anticipation of the collection of annual levies, if thereby the construction of the roads can be facilitated.

   *         *         *         *         *

"Sec. 22. *Be it further enacted,* That this act shall take effect from and after its passage.

"Passed February 8, 1870, c. 50, Statutes of Tennessee, 1869–70, 360, 364."

*Mr. Sparrell Hill, Mr. Henry Craft* and *Mr. L. P. Cooper* for plaintiff in error.

*Mr. W. W. Rutledge* and *Mr. William M. Smith* for defendants in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

The question to be determined in this case is whether the act of February 8, 1870, set forth in the foregoing statement, could be availed of under the provisions of the constitution of Tennessee, which was adopted by vote of the people March 26, 1870, and went into effect on the 5th day of May of that year.

By that act the corporate authorities of the city of Brownsville, in Haywood County, Tennessee, were authorized to issue corporate bonds to the amount of two hundred thousand dollars for railroad purposes, to be subscribed as stock in the Brownsville and Ohio Railroad Company, certificates of stock in the latter to be issued to the municipality to the amount of the bonds received, and an election was provided for, to be held upon twenty days' notice, "at which election all the legal voters shall have the privilege of voting for or against the issuance of said railroad bonds; and unless a majority of the votes cast at such election be in favor of the proposed issuance of railroad bonds, no authority shall be given by this act to issue the same; but in case a majority of the votes cast be in favor of the issuance of said bonds, the mayor of the city shall subscribe to the stock of said railroad company the amount so voted; said stock to be paid in bonds, as provided for by this act."

The 29th section of article 2 of the state constitution of 1834–1835 was as follows:

"The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to state taxation."

This language was retained in § 29 of article 2 of the constitution of 1870, which then proceeded thus:

"But the credit of no county, city, or town shall be given or loaned to or in aid of any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city, or town become a stockholder, with others, in any company, association, or corporation, except upon a like election, and the assent of a like majority."

Then came an exception of certain enumerated counties from the operation of the restriction, until 1880. Sections 1 and 2 of article 11 provided:

"Section 1. All laws and ordinances now in force and in use in this State, not inconsistent with this constitution, shall continue in force and use until they shall expire, or be altered or repealed by the legislature. But ordinances contained in any former constitution, or schedule thereto, are hereby abrogated.

"Section 2. Nothing contained in this constitution shall impair the validity of any debts or contracts, or affect any rights of property, or any suits, actions, rights of action, or other proceedings in courts of justice."

It is clear that the inhibition imposed by § 29 of the constitution of 1870 operates directly upon the municipalities themselves, and is absolute and self-executing; and although power is reserved to the legislature to enable them to give or loan their credit, and to become stockholders, upon the assent of three-fourths of the votes cast at an election to be held by the qualified voters, the county, city or town is destitute of the power to do so until legislation authorizing such election and action thereupon is had.

The prohibition of the gift or loan of credit or the subscription to stock without a three-fourths vote, is not an affirmative grant of authority to give or loan credit or to become a stockholder upon a three-fourths vote.

Prior to the constitution of 1870, the legislature could have conferred on a municipal corporation the power to give or loan its credit, or to subscribe for stock, on such terms and condi-

tions as the legislature chose to impose, but after that constitution went into effect, the municipality was deprived of any power previously conferred, and could thereafter do none of these things save by an act of the legislature imparting the power as limited by the constitution.

In *Aspinwall* v. *The Commissioners*, 22 How. 364, the provision in the state constitution of Indiana, forbidding counties from loaning their credit to any incorporated company, or loaning money for the purpose of taking stock in any such company, and from subscribing for stock, unless paid for when subscribed, was held to have withdrawn all authority to make subscriptions to the stock of incorporated companies, except in the manner and under the conditions prescribed by that instrument, and that consequently a subscription made, and bonds issued after the constitution took effect, under an act of the legislature previously passed, were without authority and void. See *Wadsworth* v. *Supervisors*, 102 U. S. 534, 537.

The same view was held in *Concord* v. *Portsmouth Savings Bank*, 92 U. S. 625, as to a similar provision in the constitution of Illinois, which went into effect July 2, 1870; and in *Falconer* v. *Railroad Co.*, 69 N. Y. 491, arising under the amendments of 1874–1875 to the constitution of New York. *Railroad Co.* v. *Falconer*, 103 U. S. 821.

These cases sufficiently illustrate the distinction between the operation of a constitutional limitation upon the power of the legislature, and of a constitutional inhibition upon the municipality itself. In the former case, past legislative action is not necessarily affected, while in the latter it is annulled. Of course, if an entirely new organic law is adopted, provision in the schedule or some other part of the instrument must be made for keeping in force all laws not inconsistent therewith, and this was furnished in this instance by the first section of article 11; but such a provision does not perpetuate any previous law enabling a municipality to do that which it is subsequently forbidden to do by the constitution.

The inhibition being self-executing and operating directly upon the municipality, and not in itself enabling the latter to proceed in accordance with the prescribed limitation, further legislation is necessary before the municipality can act.

Thus, in *Jarrolt* v. *Moberly*, 103 U. S. 580, an act of the General Assembly of Missouri, approved March 18, 1870, which provided that it should be lawful for the council of any city, or the trustees of any incorporated town, to purchase lands, and to donate, lease or sell the same to any railroad company, and, for the purposes of assisting and inducing such railroad company to locate and build machine shops on such lands, and, for such purposes, to levy taxes, borrow money, and issue bonds, upon the assent of a majority of the qualified voters, was held void, as in conflict with a provision of the state constitution of 1865, declaring that the General Assembly should not authorize any county, city, or town to become a stockholder in, or loan its credit to, any company, association, or corporation, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election, should assent thereto. On the 16th of February, 1872, another act was passed providing that "no county court of any county, city council of any city, nor any board of trustees of any incorporated town, shall hereafter have the right to donate, take, or subscribe stock for such county, city, or incorporated town in, or loan the credit thereof to, any railroad company, or other company, corporation, or association, unless authorized to do so by a vote of two-thirds of the qualified voters of such county, city or incorporated town." The election authorizing the issue of bonds was held on the 26th day of March, 1872. On the 29th of March, 1872, the legislature passed another act, so amending the 6th section of the act of March 18th, 1870, as to provide for the assent of two-thirds of the qualified voters of such town or city, at a regular or special election to be held therein. And this court further held that the act of the legislature of February 16, 1872, was merely prohibitory in its character, forbidding the officers of counties, cities, and towns to loan the credit thereof or donate or subscribe stock in any railroad or other company, without the previous assent of two-thirds of their qualified voters, and in itself conferred no authority on those officers when such assent was given; and Mr. Justice Field, delivering the opinion, says: "Further legislation was needed. Such was the evident opinion of the

legislature of the State, for, by an additional act, passed on the 29th of March, 1872, the authority was given in terms."

The rule thus laid down is decisive of the case at bar. The constitutional provision prohibited all municipal gifts, loans, or subscriptions, except when authorized upon certain conditions, but it did not, in itself, operate to confer authority. Further legislation was needed, and such was the evident opinion of the legislature of the State, for, on the 16th of January, 1871, it passed an act entitled "An act to enforce article II, Section 29, of the constitution, to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes," thus giving a practical construction immediately after the adoption of the constitution.

"This act," says the court in *Kelley* v. *Milan*, 127 U. S. 139, 154, "was manifestly passed for the object stated in its title, to carry into effect the provisions of § 29 of article 2, of the constitution of 1870, and to prescribe the manner and the conditions, in conformity with the provisions of that section, in and upon which the several counties and incorporated towns in the State should have the right to impose taxes for county and corporation purposes;" and as to the second clause of the first section of the act, which repeats the language of the constitution, it is remarked: "The enactments in that clause are entirely inhibitory and negative in their character. They do not confer any authority for the giving or loaning of credit upon any municipality, nor confer the right upon any municipality to become a stockholder with others in any corporation; but they only prescribe the condition, that no credit shall be given or loaned, and no ownership of stock be created, unless the prescribed election be first held and the assent of three-fourths of the votes cast at it be first given. But the authority to give or loan credit, and to become a stockholder, under the conditions prescribed in the act of 1871, must be found in an independent grant of authority, in some other statutory provision, either general or special." *Pulaski* v. *Gilmore*, 21 Fed. Rep. 870; *Taxpayers of Milan* v. *Tennessee Central Railroad*, 11 Lea, 330.

It will be perceived that we do not assent to the view that when the state government commenced under the new constitution, the act of February 8th, 1870, was amended by § 29 of article 2, so as to substitute a vote of three-fourths for that of a majority, and re-enacted, so to speak, by the first section of article 11, above quoted.

The power of ordinary legislation is vested, under all our constitutions, in the legislatures, and the constitutional convention of Tennessee did not assume to exercise such power. The amendment of a law is usually accomplished according to a prescribed course, and there is nothing here to justify the conclusion that § 29 of article 2 was designed to operate by way of amendment to prior laws, nor can it so operate, nor the act of 1870 be held to have been kept in force, for the reasons already indicated.

The proceedings resulting in the issue of the bonds whose validity is under consideration were initiated May 11, 1870, five days after the constitution went into effect, and the election was held on the 11th day of June following.

In our opinion there was no authority to hold the election and to issue the bonds, and their holders consequently cannot recover.

The judgment of the Circuit Court will, therefore, be

*Affirmed.*