## STATE *v.* PLANTERS', ETC., INSURANCE CO.

### (*Jackson.* June 21, 1895.)

1. CORPORATION. *Collateral attack of charter exemptions.*

Charter exemptions from taxation are subject to collateral attack. (*Post, p. 205.*)

2. SAME. *Acceptance of charter.*

Acceptance of charter is essential, and, to be effectual, it must be done within a reasonable time. A delay of twenty-four years is unreasonable. (*Post, pp. 206–208.*)

Cases cited and approved: 4 Wheat., 518; 1 Greenl. R., 79; 10 Wend., 266; 1 Strob. Eq., 209; 2 McLean (C. C.). 195; 16 Conn., 179, 191.

3. SAME. *Exemptions withdrawn by Constitution of 1870.*

The Constitution of 1870 forbids the granting of charter exemptions from taxation, and had the effect to withdraw all offers of charter exemptions from taxation which had not been previously accepted. (*Post, p. 208.*)

Constitution construed: Art. I.. § 8; Art. II., § 28.

Cases cited and approved: Nelson *v.* Haywood, 87 Tenn., 781; Memphis *v.* Bank, 91 Tenn., 574; 129 U. S., 479.

4. SAME. *Effect of legislative recognition.*

Legislative recognition of a corporation by changing its name and *situs*, will not give vitality to a charter exemption from taxation which had not been accepted within a reasonable time and had been withdrawn, before acceptance, by the Constitution of 1870. (*Post, pp. 208, 209.*)

5. SAME. *Case in judgment.*

Failure for a period of twenty-four years, and until after the adoption of a Constitution prohibiting exemption from taxation, to accept a charter offering exemption from taxation to the corporation, will prevent a subsequent organization under the charter so as to secure the exemption, and the fact that,

State v. Planters', etc.. Insurance Co.

after organization, the corporation is recognized by the Legislature by a statute changing its name and *situs* is immaterial. (*Post, pp. 208, 209.*)

6. SAME. *Exemption lost by change of business.*

The charter of an insurance company cannot be changed, so as to permit it to do banking instead of insurance business and at the same time preserve an exemption from taxation, after the adoption of the Constitution of 1870 prohibiting such exemptions. (*Post, pp. 209–211.*)

Case cited and approved: Memphis v. Bank, 91 Tenn., 574.

---

### FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. STERLING PIERSON, Ch.

METCALF & WALKER, C. WEATHERFORD, and F. T. EDMONDSON for Complainants.

TURLEY & WRIGHT for Planters' Fire & Marine Insurance Company.

GANTT & PATTERSON for Mechanics' Savings Bank.

TURLEY & WRIGHT and THOS. M. SCRUGGS for Memphis City Bank.

GEO. GILLHAM, Sp. J. These six cases may be disposed of by one opinion. The bills against the Planters' Fire & Marine Insurance Company were filed to recover taxes claimed to be due the State, the City of Memphis, and the County of Shelby,

for the years 1887 to 1894 inclusive, aggregating about $16,000. Both the corporation and the shareholders are sued, and alternative relief prayed. The cases were heard upon stipulations as to the material facts, whereupon, the Chancellor dismissed both bills. The complainants appealed, and assign errors. The defendant relies upon its charter, and claims complete immunity from taxation, except an annual tax to the State of one-fourth of one per cent.

On March 24, 1860, the Energetic Insurance Company, of Nashville, was chartered, and by the sixtieth clause of the act, it was provided that said company should "pay to the State an annual tax, or bonus, of one-fourth of one per cent. of each share of its capital stock which shall . (should) be in lieu of all other taxes." By an act passed March 27, 1885, the name was changed to the Planters' Fire & Marine Insurance Company, and the corporation was authorized to remove its *situs* to Memphis, Tenn. There was no organization of the Energetic Insurance Company from the date of the charter, in 1860, to the year 1884, and, apparently, no acceptance of the charter by any of the incorporators until that year. It is by this defendant contended that complainants cannot question the regularity of its corporate existence in this collateral manner, and, to this we agree, as announced in the cases of the Mercantile and German Banks, also decided at the present term, but they may call in question the immunities claimed, and upon any legitimate grounds.

This charter was granted before the present constitution was adopted, but accepted and organized afterwards. It is undoubtedly true, in case of private corporations, that the charter must be accepted within a reasonable time, and, if not, it may be withdrawn by the State.

"The acceptance of the charter or act . . is necessary in order to create a private corporation. In this respect a private corporation differs from a public one. . . . A charter or legislative act of incorporation is usually a mere offer or tender of the corporate privileges contained in it. . . . The sovereign authority cannot compel persons to become a private corporation. They can only become such by their voluntary consent. . . . A charter or act of incorporation for private purposes and personal objects, if accepted, becomes a contract between the parties accepting and the State; and an offer of corporate privileges on the one side must be accepted on the other, in order to give the contract full force and virtue. This doctrine is established by the uniform current of decisions of Courts of highest authority not only in this country, but in England." Field on Corp., Sec. 28.

In Angell & Ames on Corporations, Sec. 82, the authors say: "The terms offered by the government may, therefore, be acceded to or refused by the intended body corporate, and, if not acceded to, they have no binding effect. It of course can have

no binding effect on one party unless the other is bound," citing *Dartmouth College* v. *Woodward*, 4 Wheat., 518; *Lincoln & Kennebeck Bank* v. *Richardson*, 1 Greenl., 79; *Fire Dept.* v. *Kip*, 10 Wend., 266; *Haslett* v. *Wotherspoon*, 1 Strob. Eq., 209; *Falconer* v. *Higgins*, 2 McLean, C. C., 195.

In *Falconer* v. *Higgins*, Judge McLean says, page 202: "The creation of corporate existence can never take effect until the association be formed and the organization completed.  .  .  .  The organization being completed, existence is given to the artificial being, and its agency commences.  It is now *in esse*, but before this it was not.  Vitality is given to it by the voluntary association and organization of its members.  Had they remained passive, the law could have had no effect."

Morawetz on Corporations, Sec. 21, says: "The offer of a charter of incorporation by the State remains open for a reasonable time only, and, if not accepted within a reasonable time, its legal effect expires," citing *State* v. *Bull*, 16 Conn., 179 and 191. This is a clear and well-reasoned case. The delay was less than eleven years. The charter was granted in 1833, and an attempted organization was promptly made, but which failed, and the money subscribed was returned, and eleven years afterwards the books were again opened, but without notice (all of the stock being taken by a few parties). Upon a *quo warranto* proceeding, the reorganization was held to be invalid, and the charter was forfeited.

Grant on Cor., Sec. 20, states the English law to be: "The acceptance must be clearly proven, for, even where an Act of Parliament erected a corporation and named the corporators, it was held to be necessary to show the express consent of one of them, who was a member of Parliament at the time of the passing of the Act." *Scott* v. *Berkely*, 3 C. B., 925.

In the present case there was a delay of about twenty-four years between the time of the grant and the acceptance by the corporators, or by any of them. We think the incorporators had, prior to May 5, 1870, no vested right in the charter immunities which the State might not recall after a reasonable time; and we further think that twenty-four years was an unreasonable time for the corporators to remain inactive without accepting the charter.

It is earnestly insisted by the defendant that the recognition of the corporation by the Legislature in the year 1885, and after its organization in 1884, by changing its name and *situs*, relieves the question of difficulty.

We further think that the Constitution of 1870, Article I., § 8, and Article II., § 28, was a withdrawal by the State of the offer of immunity from general taxation, both as to the original corporators named in the act and as to all persons claiming under them. *Nelson* v. *Haywood*, 3 Pickle, 781-9; *Norton* v. *Commissioners*, 129 U. S., 479; *Memphis* v. *Memphis City Bank*, 7 Pickle, 574.

We think, the charter not having been accepted prior to the adoption of our Constitution of 1870, the corporation is not entitled to immunity from general taxation. It follows that the complainants are entitled to a decree here for the taxes claimed under the State revenue laws applicable to insurance companies.

The decrees of the Chancellor in both cases are reversed. The defendant, Planters' Fire & Marine Insurance Company, will pay the costs of this Court and of the Court below.

In the case against the Mechanics' Savings Bank brought by the city, the Chancellor gave complainants a decree for the taxes of 1891, 1892, 1893, and 1894, but denied all relief for the years 1887, 1888, 1889, and 1890. All parties appealed.

In the other case, the county recovered the taxes for 1891. All relief to the State was denied, as it appeared the corporation had paid to the State annually a charter tax in excess of the State taxes. All parties appealed. The taxes claimed as to this defendant aggregate about $10,000.

The bank claims under a charter granting to it all the rights, privileges, and immunities of the Gayoso Savings Institution (it being the same as the charter of the Bank of Commerce), with an added clause, as follows: "With the further privilege of buying and selling stock, notes, and other securities on commission, and subject to such taxes as the State may

14—11 P

impose on similar institutions." Acts 1886-7, Ch. 75, § 4, passed March 11, 1867.

The charter of 1867 was not accepted until the year 1885, and the opinion here delivered in the case of the Planters' Fire & Marine Insurance Company controls this case. Complainants are entitled to a decree for the taxes claimed in the bills. The decrees of the Chancellor are modified.. Defendant, Mechanics' Savings Bank, will pay the costs of this Court and of the Court below.

In the cases against the Memphis City Bank there were decrees for the taxes of certain years, but as to other years all relief was denied. The taxes involved, as to this bank, aggregate about $48,000. All parties appealed, and assign errors. This case, when on demurrer, was decided by this Court, and is reported in 7 Pickle, 574. No new questions are presented. By an Act passed since the Constitution of 1870, the corporation was authorized to change its business from that of insurance to banking, under which it has since done only a banking business. The Court held that the Legislature had no power to so change the business and preserve an immunity from taxation. The question was then carefully considered, and the decision deliberately reached. We have again considered the case in the light of the very able and earnest appeal of counsel for the bank, both orally and in their briefs, but are constrained to adhere to our former decision. We are satisfied with its reasoning and with

the conclusions then reached.    Complainants are en
titled to a decree here for the taxes claimed.    The
decrees of the Chancellor are modified.    The defend-
ant, the Memphis City Bank, will pay the costs
of this Court and of the Court below.