RAILROAD COMPANY *v.* FALCONER.

RAILROAD COMPANY *v.* WEEKS.

1. In accordance with the petition of the tax-payers of a town in New York, dated March 25, 1872, the county judge appointed commissioners, who were empowered and directed to subscribe for stock in a railroad company when its road should be constructed through a certain village. The road was not so constructed until Oct. 20, 1875. *Held,* that as, by the terms of the petition and the proceedings of the judge thereon, the construction of the road was a condition precedent to the exercise by the commissioners of their power to make the subscription, they, being merely agents of the town, had no authority to act in the premises until that condition was performed.

2. A contract, therefore, under date of June 14, 1872, between the company and the commissioners, whereby the latter assumed to bind the town to subscribe for stock when the road should be so constructed, being *ultra vires,* no rights of the company were impaired by the amendment to the constitution of the State (*infra,* p. 822), which took effect Jan. 1, 1875, and prohibited all municipal aid to corporations by subscriptions of stock, or otherwise.

3. *County of Moultrie* v. *Savings Bank* (92 U. S. 631) distinguished.

ERROR to the Supreme Court of the State of New York. The facts are stated in the opinion of the court.

*Mr. Richard T. Merrick,* for the plaintiff in error.

*Mr. Richard P. Marvin* and *Mr. Clarkson N. Potter, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

The first of these cases was a petition filed by certain tax-payers of the town of Ellicott, in Chatauque County, New York, on behalf of themselves and others, against the Buffalo and Jamestown Railroad Company and Weeks, Breed, and Jones, commissioners to issue bonds for the town, seeking to restrain the issue and delivery of certain town bonds to the railroad company and to prevent a subscription to its capital stock on behalf of the town. In this case a decree was made in favor of the petitioners, awarding a perpetual injunction against the issue of the bonds and the subscription of stock; and this decree was affirmed by the Court of Appeals. The second case was commenced by submitting to the Supreme Court of the State, in a special statutory procedure, an agreed statement of facts in relation to the issue of the bonds and the

subscription of the stock which form the subject of the first action, with a prayer on the part of the railroad company, as plaintiffs, for an order directing the issue of the bonds and the subscription of the stock, and a prayer of the town commissioners, as defendants, for a decree against such issue and subscription. In this case a decree was made as prayed by the defendants, which was also affirmed by the Court of Appeals. To reverse the decrees in both of these cases, the present writs of error were sued out by the Buffalo and Jamestown Railroad Company, the plaintiff in error.

The jurisdiction of this court to review the decision of the State Court of Appeals is based upon the effect given by said court to the amended Constitution of the State of New York, which went into operation on the first day of January, 1875, whereby, as is alleged by the plaintiff in error, said constitution was made to impair the obligation of a contract previously entered into by the town of Ellicott with the railroad company to subscribe to the capital stock of the latter to the amount of $200,000, and to deliver to it the bonds of the town in payment of said subscription. The clause of the amended constitution to which such effect is alleged to have been given, is that which declares as follows: "No county, city, town, or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, or corporation, or become directly or indirectly the owner of stock in or bonds of any association or corporation, nor shall any such county, city, town, or village be allowed to incur any indebtedness, except for county, city, town, or village purposes." The Court of Appeals held that there was no such contract in existence, as alleged by the plaintiff in error, when the amended constitution went into effect, and, therefore, that the prohibition contained in the clause just quoted was conclusive against the right and power of the town of Ellicott to issue the bonds and subscribe for the stock which form the subject of this litigation. The question for us to consider, therefore, is whether any such contract, valid and binding on the town, did exist.

Briefly stated, the facts of the case were as follows: In 1872, when the proceedings took place out of which the present controversy arose, the laws of New York in relation to giving

municipal aid to railroad companies like that of the plaintiff in error were contained in three acts of the legislature passed respectively, one on the 10th of May, 1869, by way of amendment to the general railroad law; an amendment to this amendment, passed April 28, 1870; and a further amendment, passed May 12, 1871. By the first of these statutes it was provided that, whenever a majority, in number and amount of taxable property, of the taxpayers of any municipal corporation should make application to the county judge, by petition expressing a desire that the corporation should create and issue bonds to any amount named in the petition (not exceeding one-twentieth of the taxable property in the corporate limits), and should invest the same, or the proceeds thereof, in the stock or bonds of any designated railroad company in the State, the said county judge should give public notice of a hearing to be had before him for the purpose of ascertaining whether the petition was, in fact, signed by the requisite majority of taxpayers; and, having determined this to be the fact, he should then appoint from the freeholders, residents, and taxpayers of the corporation, three commissioners to carry out the request of the petitioners. The duties imposed upon these commissioners were limited and specific, and were, to prepare and execute the proposed bonds in the name and under the seal of the corporation, and in its name to subscribe to the stock of the railroad company designated in the petition, and to pay for the same by exchanging the bonds therefor, or the proceeds thereof. They were also authorized, after subscribing the said stock, to represent the town as a stockholder at all meetings of the railroad company. The act of 1870 also authorized the commissioners and the railroad company to enter into an agreement for limiting and defining the times when and proportions in which the bonds should be delivered, and the places where and purposes for which they should be applied. By the act of 1871 the act of 1869 was modified by inserting the following clause in the first section, namely: "The petition authorized by this section" [that is, the petition of the taxpayers presented to the county judge] "may be absolute or conditional; and, if the same be conditioned, the acceptance of a subscription founded on such petition shall bind the railroad company

accepting the same to the observance of the condition or conditions specified in such petition."

In the present case the petition of the taxpayers of the town of Ellicott was dated March 25, 1872, and expressed their desire in the following terms: to wit, "Your petitioners desire that the said town of Ellicott shall create and issue its bonds to the amount of $200,000, and invest the same, or the proceeds thereof, in the stock of the Buffalo and Jamestown Railroad Company, upon the condition that the line of the railroad of said company to be constructed from the city of Buffalo to the line of the State of Pennsylvania, in said county, shall be located and constructed through the village of Jamestown in said town of Ellicott, before said bonds shall be delivered to said company or sold." The petition contained the usual averment that the petitioners were a majority of the taxpayers, &c., and, after the proper proceedings had, the county judge appointed the commissioners before named to carry out the purposes of the petition.

On the 14th of June, 1872, the commissioners entered into an agreement with the railroad company (the plaintiff in error), by which they agreed that when the said company should have located and constructed, through the village of Jamestown, in said town of Ellicott, their proposed railroad running from Buffalo to the state line of Pennsylvania, they, the said commissioners, or their successors in office, would immediately subscribe, in the name of the town, to the capital stock of the company to the amount of $200,000, and would pay for it by delivering to the company the bonds of the town, to be executed by the commissioners or their successors in office, and to bear date of the time of such subscription; and in consideration thereof the railroad company agreed that they would receive such subscription and payment, and issue proper certificates for the stock so to be subscribed. The agreement contained a reference to the petition and proceedings under which the commissioners were appointed, and a declaration on their part that they did not undertake or agree to perform the conditions of the contract except as empowered and authorized by said proceedings.

The defendants in error contend that this agreement was

*ultra vires* of the commissioners, and wholly without force or effect as against the town of Ellicott.

On the 26th of August, 1874, the commissioners caused to be prepared and executed bonds of the town of Ellicott to the amount of $200,000, payable to the railroad company or bearer, and delivered them to Robert Newland and A. F. Allen, as trustees, taking from them a receipt in which it was declared that Newland and Allen should, upon the completion of the road through Jamestown, and upon the commissioners having subscribed $200,000 to the capital stock of the railroad company, and having received the certificates therefor, deliver said bonds to the railroad company, in payment of such subscription. It is manifest that this deposit of bonds cannot affect the rights of the parties. By the terms of the deposit, they were only to be delivered when the stock was subscribed; and, if that cannot be lawfully done, the bonds must be returned to the town to be cancelled.

The railroad was not constructed through Jamestown until the 20th of October, 1875. On the 1st of January, 1875, when the amended constitution went into effect, nothing had been done except to survey the route and file a map thereof.

The question then is, whether, at that time, under the circumstances above detailed, the railroad company had acquired by contract a vested right to have and receive the town's subscription to its stock, and a delivery of the bonds in payment thereof.

We are clearly of opinion that the agreement made by the commissioners with the railroad company in June, 1872, was *ultra vires*. Their powers were confined to subscribing for the stock and making and issuing the bonds in payment thereof when and as the petition of the taxpayers directed, — that is, after the road was completed through Jamestown. By the act of 1870 they might also stipulate as to the instalments in which the bonds should be delivered, and the purposes for which they might be applied. But the power to do this being but an incident of the principal power to make and issue the bonds, and being only intended to enable the commissioners to prescribe the times and manner of their issue and the uses to which they should be applied, would not properly arise, and

could not be effectively exercised, until the principal power itself arose and became exercisible. Whilst, however, the commissioners had the power, or, rather, would have the power, at the prescribed time, to subscribe for the stock and to execute and issue the bonds, neither the statutes nor the taxpayers' petition gave them any power to make a contract to subscribe for stock, nor a contract to deliver bonds to the railroad company. They were not charged with any such duty; they were not invested with any such power.

The case of the railroad company, therefore, must stand upon the effect of the taxpayers' petition and the proceedings had thereon before the county judge. If, under the operation of existing statutes, these proceedings amounted to a contract between the town and the railroad company, no subsequent legislation, or constitutional amendment, could lawfully impair its obligation. But it is difficult to see how the said petition and proceedings, including the appointment of commissioners, can be construed as amounting to such a contract. All that was done by the town, through the action of its taxpayers and the county judge, was to appoint agents for making a subscription and issuing bonds on the happening of a certain event. When that event should happen, it would be the duty of those agents, under the fifth section of the act of 1869, to execute their commission. The words of the section are: "Such commissioners are further empowered and *directed* to subscribe," &c. But to whom did they owe this duty? Evidently to the town which appointed them; not to the railroad company. The latter came under no obligation, and acquired no rights, until the commissioners should subscribe to its stock. Had no conditions been imposed by the petition, the duty of the commissioners to subscribe stock and issue bonds would have arisen immediately after their appointment; — but it would have been an obligation owed to their principals alone. The conditions which were in fact imposed required, it is true, something to be done by the railroad company before the commissioners could act; but no stipulation was demanded of the company, or given by it, that this something should be done. The two parties were not brought together. There was no mutuality between them. Each was free to act as it listed.

This was the condition of things on the 1st of January, 1875, when the new constitution went into operation, prohibiting all municipal aid to corporations or individuals, by subscription of stock or otherwise. It seems to us, therefore, that the New York Court of Appeals was right in deciding that no contract existed at that time.

After the amendment took effect, no county, city, town, or village could subscribe for railroad stock; and, of course, no agent or attorney of any such corporation could do so. What had not been done before, in this regard, could not be done afterwards, unless some valid contract required it to be done. But, as we have shown, no such contract existed in this case. The action on the part of the town was voluntary up to the time of the constitutional amendment. The railroad company may have expected a subscription when their road should be completed; but they had no subscription, and had no valid agreement that any would be made. Everything was inchoate and undetermined up to the first day of January, 1875; and then all power to subscribe for stock was taken away from the town.

*County of Moultrie* v. *Savings Bank* (92 U. S. 631) is confidently relied on by the plaintiff in error to sustain their position that a contract did exist. But an examination of that case will show that it was very far from being parallel to the present. There the statute of Illinois authorized the board of supervisors of the county of Moultrie to subscribe to the stock of a particular railroad company by name, to an amount not exceeding $80,000, and to issue bonds therefor when the road should be opened for traffic between certain points. Before this event took place, the board ordered that a subscription to the stock of the company in the sum of $80,000 be made, and that, in payment therefor, bonds should be issued to the company when the road should be open for traffic. This resolution was acted upon by the railroad company as a subscription, and was entered on its minutes, and the promised bonds were disposed of by contract. This court held that the board of supervisors itself had complete authority to make a present subscription, and that this included the power to agree to subscribe, and that the resolution amounted to a subscription or,

at least, to an agreement to subscribe, which, being accepted and acted upon by the railroad company as such, created a contract between the county and the company. In the case before us, no act equivalent to the action of the board of supervisors of Moultrie County was ever done by any person or body of persons, having, at the time of such act, a present power to subscribe for stock or to issue bonds of the town of Ellicott. The taxpayers had no authority to make a subscription of stock, or to issue bonds, or to make any contract to do so; they could only express their desire that it should be done, and that commissioners should be appointed to do it; and when they did express such desire, it was conditional, as before stated. The commissioners, as we have seen, had no power to act, for no power was given them to act, until the railroad was located and completed through Jamestown. It follows that nothing which was done in the present case can be fairly regarded as equivalent to the action of the parties in the case of Moultrie County. The circumstances of the two cases were essentially different.

We think that there is no error in the record of either of the cases, and that the decrees in both must be

*Affirmed.*