## NELSON *v.* HAYWOOD COUNTY.

### (*Jackson.* June 7, 1889.)

1. CONSTITUTION. *Bonds. Enabling Act annulled by new Constitution.*

   Chapter 50, Acts 1869–70, Sec. 8, empowering Haywood County to issue bonds in aid of railroad construction upon a *majority* vote was annulled by Art. 2, Sec. 29, Constitution 1870.

   Cases cited and approved: Norton *v.* Commissioners, 129 U. S, 479; Aspinwall *v.* Commissioners, 22 How., 374.

2. SAME. *Same. Contract to issue made before adoption of Constitution.*

   If the power to issue bonds under the enabling Act has not been exercised, and no binding contract has been made to issue them before the annulling Constitution goes into effect, then the exercise of such power thereafter is unauthorized and void; but if such contract has been made anterior to the adoption of such Constitution, bonds delivered in pursuance of such agreement, subsequent to such adoption, are valid.

   Cases cited and approved: Wadsworth *v.* Supervisors, 102 U. S., 534; Railroad Co. *v.* Falconer, 103 U. S., 826; Town of Concord *v.* Savings Bank, 92 U. S., 630; County of Moultrie *v.* Savings Bank, 92 U. S., 635.

3. STOCK SUBSCRIPTION. *Manner of.*

   No actual manual subscription on the books of the company is necessary. A resolution by the County Court to subscribe, and a present acceptance by the company of such subscription, is binding and complete, although it was ordered that the Chairman of the County Court should subscribe upon the books of the company.

   Cases cited and approved: County *v.* Gillett, 100 U. S., 594; Nugent *v.* Supervisors, 19 Wall., 247; County of Moultrie *v.* Savings Bank, 92 U. S., 634.

4. RAILROAD. *Bonds. Stock. Contract. Constitution.*

   Section 8 of Chap. 50, Acts 1869–70, empowering Haywood County to *issue bonds in aid of railroad construction*, authorized, by implication, the county to subscribe for stock, to be paid for by said bonds, and the county having voted to issue the bonds therefor, and the County Court

having agreed to subscribe for the stock and to issue the bonds, and the railroad company having accepted such subscription and agreement to deliver the bonds, all of these things having been done before the Constitution of 1870 went into effect, such rights became vested as could not be affected by the new Constitution, and the bonds delivered after its adoption are valid.

5. BONDS. *Donation. Contract. Constitution.*

If a donation of bonds be authorized, and it is the duty of the County Court to issue the bonds upon a favorable vote, and an agreement is made by the County Court to issue the bonds, which is accepted by the railroad company, and the bonds are issued in pursuance of such agreement, though after the adoption of the annulling Constitution, they are valid in the hands of an innocent purchaser.

Cases cited and approved: Livingston County *v.* Portsmouth Bank, 128 U. S., 126; Town of Concord *v.* Savings Bank, 92 U. S., 630.

6. ELECTION. *Irregularity. Innocent purchaser.*

Where the power is given to a county to issue bonds upon a favorable vote, and the County Court is charged with the duty of ordering the election, determining the result, and issuing the bonds, and it issues the bonds, reciting the Act authorizing them, and pays interest on them for fifteen years, an irregularity in the election notice cannot be set up against an innocent purchaser.

Cases cited and approved: Town of Coloma *v.* Eaves, 92 U. S., 484; Humboldt Township *v.* Long, 92 U. S., 642; Dixon County *v.* Field, 111 U. S., 94; Anderson County *v.* Beal, 113 U. S., 238; County of Moultrie *v.* Savings Bank, 92 U. S., 636; Livingston County *v.* Portsmouth Bank, 128 U. S., 127.

Cited and distinguished: City of Attica, 56 Ind., 477.

7. BONDS. *Conditions. Innocent purchaser.*

If the county, in its contract for issuing the bonds, imposes conditions other than those fixed by the Legislature, which are to be complied with by the railroad company, before the bonds are to be delivered, it cannot assert, as against an innocent holder of such bonds, that its officer charged with the duty of passing upon the fulfillment of the conditions and of delivering the bonds, issued them without the conditions being complied with.

Cases cited above.

8. SAME. *Interest. Constitution. Usury.*

Bonds issued pursuant to an Act authorizing them to bear interest lawful at the place where they are payable are not usurious on their face,

Nelson *v.* Haywood County.

if the interest contracted for was lawful at the place of payment, though it be in excess of the rate allowed in this State; and such a law is not a partial law, and is constitutional.

Case cited and distinguished: McKinney *v.* Overton Hotel, 12 Heis., 104.

9. SAME. *Consolidated road.*

Where an Act authorizes the issuance of bonds to one road upon twenty days' notice of election, and after the notice has begun to run and before election day, an Act is passed authorizing the issuance to a consolidated road, the bonds issued to such consolidated road are valid.

Case cited and approved: Livingston County *v.* Portsmouth Bank, 128 U. S., 115.

---

FROM HAYWOOD.

---

Appeal in error from Circuit Court of Haywood County. January Term, 1889. W. H. SWIGGERT, J.

J. R. FLIPPIN, W. H. RUTLEDGE, SPL. HILL, and TURLEY & WRIGHT for Nelson.

A. D. BRIGHT, J. R. BOND, J. W. E. MOORE, and METCALF & WALKER for Haywood County.

J. M. DICKINSON, Sp. J. This is a petition for a *mandamus* to compel the county of Haywood to levy a tax to pay coupons upon bonds issued under Section 8, Chapter 50, Acts 1869–70, which reads as follows:

"*Be it further enacted,* That the County Court of Haywood County is hereby authorized, upon application of the President of the Brownsville & Ohio Railroad Company, to order an election in said county, to be held by the proper officers, for the purpose of ascertaining the sense of the voters of said county as to the issuance of county bonds in aid of the construction of said railroad, said election to be advertised at least twenty days in all the voting places in said county; and if a majority of all the votes cast shall be in favor of the issuance of said county bonds, then it shall be the duty of said Court to issue the same; but if there should not be a majority of the votes cast in favor of the issuance of said bonds, then said Court shall not issue them—the amount of said bonds not to exceed two hundred thousand dollars, and to run not exceeding twenty years, bearing the rate of interest allowed by law at the place where said bonds are made payable."

The Act was passed February 8, 1870, and upon the following day an order was made by the Quorum Court in pursuance of said Act, and in accordance with its terms, ordering an election to be held on the first Saturday in March, 1870. The election was held on that day, and a majority of the votes was cast in favor of the issuance of the bonds.

The return of the officer holding the election recited that, in obedience to the said order of the Court, he held the election, previous notice of the

time and places and purposes of said election having been given, "said election being opened and held, as aforesaid, in pursuance of said order, for the purpose of ascertaining the sense of the qualified voters of said county as to the issuance of one hundred thousand dollars of eight per cent. county bonds, payable at St. Louis, Mo., within twenty years from the date of issuance by said Haywood County, to be subscribed as stock to and used in aid of the construction of the Brownsville and Ohio Railroad; and said qualified voters were instructed by said notice that those who were in favor of the issuance of said bonds should have written or printed upon their ballots or tickets 'Bonds,' and those who were opposed to the issuance of said bonds should have written or printed upon their ballots or tickets 'No Bonds.'"

On the 4th day of May, 1870, the County Court of Haywood County, after reciting its previous order, under said Act, for an election, and the result of the vote, proceeded as follows: "It is therefore ordered and decreed by the Court that the Chairman of this Court be and he is hereby authorized, empowered, and ordered, in the name of Haywood County, to subscribe upon the books of said Brownsville and Ohio Railroad Company stock to the amount of one hundred thousand dollars, to be paid or liquidated by said county by the issuance to said company of one hundred thousand dollars Haywood County coupon bonds, payable twenty years after date of issuance at the city of

St. Louis, Mo., and bearing interest from date at eight per cent. per annum, and payable annually; said bonds to be used by said company in aid of the construction of said Brownsville and Ohio Railroad. And the said Chairman of the Court is ordered to sign and issue to the said Brownsville and Ohio Railroad Company said bonds, with coupons attached, upon application of its President, upon the following conditions, to wit:

"*First.* That said railroad company shall take said bonds at a par valuation, and shall issue for the same, to said county, certificates of stock in said company, equal in amount to the amount of bonds received hereunder, which said certificate or certificates of stock shall entitle the holder or holders thereof to all the rights, privileges, benefits, and immunities conferred upon other stockholders in said company.

"*Second.* Before said bonds are issued, the said Brownsville & Ohio Railroad Company shall exhibit to said Chairman such an amount of *bona fide* and solvent stock, subscribed in Haywood County, as will be sufficient, in addition to three-fifths of the one hundred thousand dollars herein ordered, to prepare the road-bed of said railroad for the iron and rolling stock from Brownsville to the Dyer County line.

"*Third.* Said bonds not to be issued before May 20, 1870.

"And thereupon came into open Court J. D. Smith, President of said Brownsville & Ohio Rail-

road Company, having been thereunto previously authorized by the Board of Directors of said Company, and accepted, in the name of said company, the one hundred thousand dollars of county subscription herein ordered, and the issuance of said county bonds upon the conditions herein imposed."

Upon the following day, May 5, 1870, our present Constitution went into effect.

Article II., Section 29 provides: * * * "But the credit of no county, city, or town shall be given or loaned to or in aid of any person, company, association, or corporation, except upon an election to be first held by the qualified voters of such county, city, or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city, or town become a stockholder with others, in any company, association, or corporation, except upon a like election, and the assent of a like majority."

Under an Act passed February 17, 1870, which was sixteen days before the election, and after the notice for said election, which required twenty days, began to run, the Brownsville & Ohio Railroad Company became consolidated with the Brownsville & Holly Springs Railroad Company, under the corporate name of Holly Springs, Brownsville & Ohio Railroad Company. This had in view the building of a line from a point in Kentucky, by way of Brownsville, as contemplated by the first company, and continuing to Holly Springs, in the State of Mississippi.

The consolidation took place, and the said bonds were issued to the consolidated company, after the Constitution of 1870 went into effect.

Petitioner avers that the county of Haywood has, for more than fifteen years, recognized the validity of the bonds by levying, assessing, and collecting a tax to pay the interest coupons, which have been regularly redeemed up to the year 1886, and that some of the bonds have been paid by the county. She further avers that she is the owner and holder, for a valuable consideration, in due course of trade, before maturity, of the coupons described in the petition, which were a part of said issue of bonds, and that the county of Haywood refuses to pay the same, and to levy any tax for that purpose, as it is in duty bound under the law to do.

The questions to be determined by us are raised by demurrer, the grounds insisted on being:

*First.* That the power to issue the bonds was abrogated, by the Constitution of 1870 going into effect, before it was exercised under the enabling act, and that the bonds reciting upon their face the act under which they were issued, and being issued April 7, 1871, affected all holders with the infirmities existing in them by the effect of the present Constitution.

*Second.* That the Act only authorized their issuance to the Brownsville & Ohio Railroad Company, and therefore the issuance to a consolidated company, formed by virtue of a law which did

not go into effect until after eight of the required twenty days' election notice had run, was unauthorized and void.

*Third.* That the Act authorizing the issuance of bonds bearing interest at the rate allowed by law at the place where they were made payable was, for that reason, unconstitutional.

*Fourth.* That the bonds bearing eight per cent. interest on their face are usurious, and no suit can be predicated upon them.

It is claimed by the county, and it is unquestionably the law, that the Constitution of 1870, which went into effect on the fifth day of May, 1870, abrogated and annulled the Act of February 8, 1870, authorizing the county of Haywood to issue the bonds in question. Constitution of 1870, Art. 2, Sec. 29; *Norton* v. *Commissioners, Etc.*, 129 U. S., 479; *Aspinwall* v. *The Commissioners*, 22 How., 374.

This general principle is so well settled and so generally recognized as to make a further citation of authorities unnecessary.

If the power has not been exercised, and no binding contract or agreement has been entered into before the annulling Constitution goes into effect, then the exercise of such power thereafter is unauthorized and void. *Wadsworth* v. *Supervisors*, 102 U. S., 534; *Railroad Company* v. *Falconer*, 103 U. S., 826; *Town of Concord* v. *Savings Bank*, 92 U. S., 630; *County of Moultrie* v. *Savings Bank*, 92 U. S., 635.

No case has been cited, holding that the power to issue bonds or make a subscription, exercised after the annulling law went into effect, was extinct and the act thereunder void, which is not unconditionally based upon a state of facts showing either, that the right to exercise such power did not accrue, or that no agreement, competent to be made, to exercise such power, had been entered into, before such repealing law went into effect.

In *Aspinwall* v. *Commissioners*, 22 How., 375, the Court says that the charter of the company provided "that it *should be lawful* for the County Commissioners, through which the road passed, to *subscribe for stock* on behalf of the county at any time within five years after the opening of the books of subscription, if a majority of the qualified voters of said county, at an annual election, shall vote for the same." The vote was had authorizing the subscription, but no subscription was made before the new Constitution took away the power. The Court held that, until the subscription was made nothing was binding, and therefore no rights could have vested before the power to subscribe was taken away. The vote only clothed the Commissioners with a power, and this power had never been exercised before it was taken away.

In *Concord* v. *Savings Bank*, 92 U. S., 629, the act authorizing a vote upon "a proposition to appriate moneys" to "aid in the construction" of

a railroad, the Court held that the mere vote was not an appropriation, and that "the town was not authorized to make it, until the railroad was located and constructed through the town." The vote was taken authorizing the appropriation, but by the terms of the act, as construed, this was a mere authorization to make an appropriation, after something had first been done. Before the road was located and constructed the power to appropriate was taken away. The Court said, "we do not say that the new Constitution could annul or impair any contract that was made between the the town and railroad company, *during the time. in which the town had authority to make it.* * * * * The town voted, on the 20th day of November, 1869, *that it would make a donation,* provided the company would run its railroad through the town. On the 20th of · June, 1870, the company gave notice of its acceptance of the donation. *But the town was not empowered to make the donation until the road was located and constructed through the town."*

No such condition upon the exercise of the power to issue or contract to issue the bonds by Haywood County existed; but the Act says "if a majority of all the votes cast shall be in favor of the issuance of said county bonds, *then it shall be the duty of said Court to issue the same."*

In *Wadsworth* v. *Supervisors,* 102 U. S., 534, the Act declared that "if a majority of the ballots cast in any of said counties be for railroad aid, *the County Board of Supervisors of.* said counties

*shall have power*, by resolution, to cause to be issued bonds," etc. The Act authorizing the levy of taxes to pay the interest on said bonds was repealed, and the Supervisors thereafter refused to issue the bonds. The Court held that, in this case there was "*no binding agreement or contract*" between the railroad company and the county, by which the county became legally bound, through its Board of Supervisors, to execute and deliver the bonds, and that the Act, "neither in express terms nor by necessary implication, made it imperative upon the Board of Supervisors to issue bonds in pursuance of the popular vote. * * * As the statute only declared that the Supervisors should have power, by resolution, to cause bonds to be issued when the people voted in favor of railroad aid, we are not at liberty to say that the Legislature meant such vote to be a positive command to exercise that power, without regard to the circumstances arising after the expression of the legislative will."

The Court further says that, admitting that it was a positive mandate, yet it could be revoked by the Legislature at any time "*before the bonds were in fact issued,* or before the *county came under legal obligation to issue them.*" And again it says that the Supervisors did not, prior to the repealing of the Act, "assume to impose any legal obligation upon the county, either by an actual issue of the bonds or *by an agreement to issue and deliver them upon the completion of the road through the County.*"

In *R. R. Co.* v. *Falconer*, 103 U. S., 821, the law prescribed that the petition of the tax payers authorizing Commissioners to subscribe for stock might be conditional, and that the condition would bind the railroad company. The petition contained the condition that the subscription should not be made until the railroad had located and constructed its road to a designated point. The railroad was not constructed until after the Act was repealed by the new Constitution. The Commissoners undertook to make an agreement to subscribe before the condition precedent to the vesting of any right in them to make a subscription had happened, and it was held that the bonds issued in pursuance of such *ultra vires* act were void. The Court held that all that was done by the town was, to "appoint agents for making a subscription and issuing bonds on the happening of a certain event." That what had not been done before the revoking constitutional amendment went into effect could not be done afterward, "unless some valid contract required it to be done. But as we have shown, no such contract existed in that case." The Court distinguished this case from *County of Moultrie* v. *Savings Bank*, 92 U. S., 631, showing that in that case there was "*authority to make a present subscription, and that the resolution amounted to a subscription, or at least to an agreement to subscribe, which, being accepted and acted upon by the railroad company as such, created a contract between the county and the company.*"

All of these cases, except the last, are cited and relied on by defendant, and therefore they have been commented upon at length. They do not establish that the delivery of bonds, made either under an Act authorizing a subscription or one authorizing a donation, is void, because they are delivered after the annullment of the enabling Act, but that this is true, only in the event that the right to have the bonds delivered had not vested, either by the effect of the Act or by virtue of a valid contract made under it before it became void. In *County of Moultrie* v. *Savings Bank*, 92 U. S., 631, the Act provided that the Supervisors were authorized to subscribe for stock and issue bonds therefor; "*provided,* that the same shall not be issued until the road shall be opened for traffic between the city of Decatur and the town of Sullivan aforesaid."

The Court held that the power to subscribe was not fettered by conditions, but that only the payment was postponed until the railroad should be opened, and, " as a greater power includes every constituent part of it, the legislative Act empowered the Board of Supervisors to *agree to subscribe preparatory to an actual subscription.* The power thus granted was never revoked, unless it was by the new Constitution of the State, which did not take effect prior to July, 1870. *Whatever was done in pursuance of the power before that time*, if any thing was done, could not be affected by the Constitution subsequently adopted.' Subscriptions *or*

*contracts to subscribe,* made in pursuance of it before it was abrogated, remain binding."

In that case the Board of Supervisors informally resolved to subscribe, and the resolutions were referred to a lawyer to be put in form, and subsequently were entered by the Clerk upon the records. It provided that "the County of Moultrie subscribed," and that when the railroad "shall be open for traffic" between the city of Decatur and the town of Sullivan aforesaid "there be issued bonds," and that said bonds be delivered to said railroad company in full payment of the subscription of said county, so made as aforesaid. There was no further subscription. None was made on the books of the company. The Court says, "a subscription on the books of the company was unnecessary, for that which amounted to a subscription had been made in December, 1869." "The resolution to subscribe was its own act—its immediate subscription." On the point that an actual subscription is not necessary the Court cites authorities. (Page 634).

The opinion proceeds:

"And if this conclusion could not be reached it would make but little difference to the present case; for it could not be doubted that the action of the Board *was at least an undertaking to subscribe,* and this was assented to or accepted by the railroad company. The resolutions were entered of record by the Clerk and President of the railroad company, and the company made an appropriation

of the bonds to be received in payment for the subscription, by a contract made on the 15th of April, 1870. In either aspect of the case, therefore, there was an authorized contract existing between the county and the railroad company when the new Constitution came into operation. *No matter whether the contract was a subscription or an agreement to subscribe, it was not annulled or impaired by the prohibitions of the Constitution. The delivery of the bonds was no more than performance of the contract."*

The resolutions of the Haywood County Court ordered the Chairman to subscribe upon the books of the company for stock to be paid for by the bonds voted for, and to issue the bonds to the President of the company after the company had complied with certain conditions, which are set out in full in the first part of this opinion. The delivery was not conditioned upon the Chairman first subscribing on the books, but upon things to be done by the company, and not by the Chairman. No time is fixed for the subscription to be made on the books, and it manifestly was intended as a merely formal act in pursuance of what the order of the Court and the acceptance by the company, based upon the vote of the people, had already accomplished. That the Court understood that the subscription was then consummated, is evidenced by the fact that, the same order authorizing it, recites that the President of the railroad company thereupon came into open Court, "having been

thereunto previously authorized by the Board of Directors of said company, and *accepted, in the name of said company, the one hundred thousand dollars of county subscription herein ordered, and the issuance of said county bonds upon the conditions herein imposed.*"

The contracting parties evidently understood that the act of subscription was then and there consummated. No actual manual subscription on the books of the company was necessary. *County* v. *Gillett,* 100 U. S., 594; *Nugent* v. *Supervisors,* 19 Wall., 247; *County of Moultrie* v. *Savings Bank,* 92 U. S., 634.

This case is very like, and the facts are even stronger than those set out in the Moultrie case, 92 U. S., 635, for here both of the parties to the contract, then present, understood that it was an offer and an acceptance of a subscription.

If the county were here suing the railroad company for a delivery of the stock, predicating its rights upon the assertion that the contract, upon the facts stated, was completed on May 4, 1870, and the company were denying the proposition, the conclusion against the company would be inevitable. The contention of the learned counsel for the county is that, the aid authorized by the Act of 1870 was by a donation of bonds, and that the county had no power to subscribe for stock; and this is based upon the fact that the section of the Act under which the election was held does not, in terms, provide for a subscription for stock. It is

true that the section empowering the county to hold an election "as to the issuance of county bonds in aid of the construction of said railroad company," says nothing about stock or subscription. The Act in which this section appears is a part of an Act, which provides for aid to different railroad companies by several counties and municipal corporations by the issuance of bonds; and all of them are expressly empowered to subscribe stock except the county of Haywood, the section applying to Haywood County being silent on that subject. On the part of the county it is argued that this difference was intentional upon the part of the Legislature, and that the absence of the express power to subscribe in this section emphasizes, by contrast with its insertion in the other sections, this intention, and clearly establishes that it was the purpose of the Legislature that Haywood County alone should donate its bonds, and have no power, express or implied, to contract for any benefit for them. On the other hand, it is argued that there was no reason for such discrimination; that it is contrary to the history of legislation in this State in such matters; and that the issuance of the bonds being the burden assumed by the county, and the stock to be received in payment therefor being purely a benefit, for which the county assumes no new liability whatever, there is no reason for the strict construction contended for.

In Section 17 of Chapter 57, Acts 1869–70, which is the statute authorizing the consolidation

of the Brownsville & Ohio and the Brownsville & Holly Springs Railroads, it is provided that "the county of Haywood and the city of Brownsville shall have the same authority to *subscribe stock* or *grant aid* to the Brownsville & Holly Springs Railroad Company that *they may have to take stock* in or grant aid to the Brownsville & Ohio Railroad Company." This Act was passed by the same Assembly that passed the former Act, and they were enacted within a few days of each other. It is insisted for petitioner that this Act is a contemporaneous legislative construction of the former Act, and that it recognizes that Haywood County had the right to subscribe for stock in the Brownsville & Ohio Railroad Company.

On the other hand, it is insisted that the language embraces alternatives, "subscribe stock, or grant aid," and contrasts the different powers granted expressly to the city of Brownsville and the county of Haywood respectively, by the former Act.

There is strength in both positions, and we have given them consideration, but the language of the second Act is not sufficiently explicit to disclose any clear legislative intent as to the construction of the former Act. At most it is only suggestive of an understanding of the Legislature, and it is susceptible of two constructions. Therefore it is not a certain and reliable aid in construing the enabling Act.

The county, by the plain terms of the Act,

was empowered to vote bonds in aid of the railroad. The county now claims that, from the language of this Act, the Legislature intended to debar it of all right to contract for a consideration for its bonds in the nature of a stock subscription or otherwise, and that the only power bestowed, was that of donating the bonds as a pure bounty.

The Act must be construed now, as it would have been if the necessity for its construction had arisen before the new Constitution went into effect.

In seeking for its true intent, the rights and interests of the county, as they were to be affected by its action under it, are to be borne prominently in mind, for that was the subject-matter legislated upon.

The county, now seeking to annul its bonds, asks for a construction which would have been most harsh upon it at the time the bonds were voted. It would be a most narrow construction to hold that, the power granted to vote for bonds in aid of the construction of a railroad, could only be exercised in donating the bonds, and that the language used by the Legislature absolutely excluded their use in any other way. The Act says nothing about donating, and the donation of bonds was a thing quite rare, if not totally unknown in our legislation. No case of a pure donation in this State, under similar or indeed any language, has been called to our attention. Aid, by use of the bonds, might have been extended in at least

two other ways besides donation, namely, by a loan of the bonds, or by giving them in payment of stock subscription.

The latter has been the usual method which prevailed in this State. Why, then, should it be said that the Legislature meant that, of three ways, the one necessarily must be followed which was least to the interest of the county, and most at variance with the practice in this State? The only argument in favor of such construction is that, at present the county is interested in having that construction put upon the Act, which would have been most detrimental to its interest when it was passed. It would require unequivocal language to indicate that the Legislature intended that county bonds should be donated to the exclusion of all other uses of them in aiding railroad construction. The case of *Concord* v. *Savings Bank*, 92 U. S., 625, is relied on as an authority for the construction contended for. The question of the construction of the language authorizing a donation was not the point decided, but whether the word " subscriptions" included donations. The Court said that the language of the legislative Act in question authorized a donation; but that was not a contested point in the case. The language, however, was " to appropriate money to aid in the construction." An appropriation of money by Government in aid of public enterprises may well carry with it the idea of a subvention, but the voting of bonds in aid of construction does not necessarily

imply a bounty, as is contended in this case. In construing such language, the interest of the county voting the aid, and the prior history of legislation on that subject, would control in the construction. The Concord case above cited is not in any sense an authority on this point, for the language is different, and the question of whether or not it implied a donation was not in contest. To say that the language of our Act necessarily meant a donation would be a forced construction. To say that it, while authorizing the issuance of bonds, did not intend that the county might not, by subscription for stock or otherwise, contract for a consideration for them, confers no new power upon the county to assume an obligation or onerate itself with a burden. The power to do an act by which it might suffer loss was conferred in authorizing the bonds, and that is the power that is strictly construed. There is no reason for strict construction when the question of receiving a benefit alone is involved. The power to vote bonds in aid of construction carried with it the power to dispose of them by the county in aid of construction in the usual ways, and stock subscription was unquestionably the one generally pursued by towns and counties.

In view of the character of our legislation on the subject, and of the consideration that the power to subscribe for stock, incident to the issuance of bonds agreed by the railroad to be received in full payment of the stock, is purely in the inter-

est of the county, enabling it to take a benefit in exchange for its bonds, without the assumption of any burden or obligation as a consequence of such agreement to subscribe, we are of the opinion that Haywood County had the right to subscribe for stock, to be paid for in the bonds authorized to be issued by said Act. The voting for the issuance of the bonds, the subscription for stock, and agreement to issue the bonds therefor at a future day, after certain acts to be performed by the company had been done, and the acceptance by the railroad company of the subscription and the agreement to issue such bonds, all constituted a valid, binding contract, which could not be affected by the subsequent change in the Constitution.

But if the Act be treated as only authorizing a donation, then, inasmuch as it directed the bonds to be issued upon a favorable vote, and imposed no other conditions, and the county agreed to deliver them, and the railroad company assented to it, the rights of the company, even on the theory of a donation, became fixed, and the fact that it consented to a future day for delivery, after the performance of certain acts, would not alter its rights. The Legislature had the power to authorize a donation and fix the conditions upon which rights to enforce it should vest. In this respect there is no difference between a donation and a subscription. *Railroad Company* v. *County of Otoe*, 16 Wall, 675; *New Buffalo* v. *Iron Company*, 105 U. S., 75.

In *Livingston County* v. *Portsmouth Bank*, 128 U. S., 126, it is said that where the statute provides that upon a favorable vote for subscription the County Court should issue the bonds and deliver them to the railroad company, this "imposed a plain duty upon the County Court, because the statute and the vote, taken together, authorized the subscription and the issue of the bonds, and no formal order by the County Court to do those acts was necessary. The statute left no discretion in the County Court, but made it the duty of the Court to make the subscription and issue the bonds. The sole duty of the County Court was to ascertain that the proper vote had been had."

Counsel for defendant contend that, before the donation is completed by delivery, the power to donate may be withdrawn, and that a promise to donate fixes no rights, and cannot be enforced, and that such proposed donation is defeated by the annullment of the Act authorizing it before delivery of the gift. No case is cited sustaining this doctrine. Authority to donate by a county, upon a vote for a public purpose, does not stand upon the same footing as a mere promise of a person to make a present at a future day. An agreement to donate by a county may be irrevocable. In every case cited on this proposition by defendant, whether it was a question of subscription or donation, there was either a condition precedent to the power to contract which had not been fulfilled, before the empowering Act was repealed, or the agents au-

thorized to bind the county had not exercised their power before it was annulled.

In the Concord case, 92 U. S., 630, where the Act was construed as empowering to donate, the Court declares that the towns, before the time arrived when they were authorized to donate, "had no authority to make a contract to give," but it distinctly declares that if an agreement to donate had been made after that time had arrived, it would have been inviolable. The only condition fixed by the Act in this case was the vote upon twenty days' notice. After that the county either had a right to agree to deliver the bonds at a future day, or it had no rights in the premises, the vote itself fixing the rights of the company. In either case such rights, whether fixed by the vote or the contract by the county, was vested before the new Constitution went into effect.

It is contended that, the rule that a power conferred upon a county, to contract for or vote upon a particular proposition, would not authorize it to contract for or vote upon another and different proposition, and that the recital of the officer holding the election, that the vote was upon bonds to be given in subscription for stock, and the action of the County Court in reference to the stock, evidence an infraction, in this case, of the rule. The order of the County Court was that the vote should be "Bonds" or "No Bonds," and the return of the officer shows that this was the proposition actually voted on, and this was in conform-

ity to the Act of the Legislature authorizing the election. It is not positive, from the officer's recital, that the notice of election actually contained any reference to subscription, but that construction is fairly inferable. If it did, that did not alter the main object of the election, which was to vote bonds in aid of a certain railroad, and this was fully explained in the notice.

The city of Attica case (56 Ind., 477) is cited as being in point, but the Court there held that the entire aim and purpose of the enabling Act, was violated, and that, under the specious guise of aiding in railroad construction, the object really aimed at was, to secure the location of shops, and that there was an entire perversion of the powers granted, and a fraud upon the law. No such state of facts exists here; but the identical road intended by the Legislature and the people to be aided was aided in the very way that the Act and the voters contemplated. The power was given to issue the bonds, and the County Court was charged with the duty of ordering the election and determining whether the requisite vote, upon a proper notice, had been cast, and of issuing the bonds. The bonds were issued by them with a recital that they were issued under the Act of 1870. The county, after they had been delivered to the railroad company by the authority vested with the powers stated, and after it had recognized them by payment of interest for fifteen years, cannot set up an irregularity in the election, against an inno-

cent purchaser. *Town of Coloma* v. *Eaves*, 92 U. S., 484; *Humboldt Township* v. *Long*, 92 U. S., 642; *Dixon County* v. *Field*, 111 U. S., 94; *Anderson County*, etc., v. *Beal*, 113 U. S., 238.

It is further said that it is not shown that the conditions imposed by the county were complied with before the bonds were issued. They were not fixed by the Legislature as conditions precedent, but existed merely by virtue of a contract with the county. An innocent purchaser was not bound to inquire into their performance.

The question presented is similar to one passed upon in *County of Moultrie* v. *Savings Bank*, 92 U. S., 636, as follows: "Now if it be supposed that the purchaser of bonds with such recitals was bound to look further (the bonds reciting the Act under which they were issued), and inquire what was the authority for the issue, where was he to look? Had he looked to the Act of the General Assembly of March 26, 1869, he would have found plenary authority for a stock subscription and for issuance of bonds in payment thereof. If he was bound to know that the constitutional provision terminated that authority after July 2, 1870, he knew that any subscription made before that time continued binding, notwithstanding the Constitution, and that bonds issued in payment of it were, therefore, lawful. If, then, he had inquired whether a subscription had been made before July 2, 1870, at the only place where inquiry should have been made, namely, at the records of the Board, he would have found an order

to subscribe equivalent to a subscription made, in
December, 1869, corresponding with the assertions
of the recitals, and declared by them to have been
a subscription. He could have made inquiry no-
where else with any prospect of learning the truth.
Every step he could have taken assured him the
recitals were true. How, then, can a county be
permitted to set up against a *bona fide* holder of
the bonds, that the authority to make a subscrip-
tion, with all its legitimate consequences, had ex-
pired before the subscription was made, in the
face of the recitals and of the county record?
Whether it had expired was a matter of fact, not
of law, and it was peculiarly if not exclusively
within the knowledge of the Board of Supervisors.
After having assured a purchaser that their sub-
scription was made in December, 1869, when they
had power to make it, it would be tolerating a
fraud to permit the county to set up, when called
upon for payment, that it was not made until after
July 2, 1870, when their authority expired."

In *Livingston County* v. *Portsmouth Bank*, 128
U. S., 127, the Court says that the County Court,
having been designated to determine that the con-
ditions existed which authorized the making of the
subscription, the fact of the issue of the bonds by
the County Court estops the county from asserting
against a *bona fide* holder of the bonds any mere
irregularity in the making of the subscription or
the issuing of the bonds.

It would be far more aggravated to permit a

county to say that it had itself imposed conditions to be complied with before the bonds were issued, and that they had been issued without such compliance. The county had a right to waive them, and it makes no difference as to the validity of the bonds in the hands of an innocent purchaser whether such conditions were waived, neglected, or complied with.

It is sought to defeat the bonds on the ground that they are void on their face for usury. The Act authorized them to be made, bearing interest at the rate of the place where they were payable. At that time Missouri had a conventional interest law, and a paper bearing eight per cent. interest on its face was legal in that State. There was good reason to permit such bonds to be made payable at money centers, as this would promote their sale and enhance their value. Such a provision was founded on a sound business reason, and we cannot presume that it was a device to pay usury, as that would be an impeachment of the good faith of the law-making power of the State. It is said that the provision was intended to cover the usual and not a conventional rate. The question is whether it is a lawful contract on its face, and this must be settled by the law of the place where it is payable, the Legislature having authorized it to be so made.

The case of *McKinney* v. *Overton Hotel*, 12 Heis., 104, is relied on by defendant, but it is not in point. The Act declared unconstitutional in that

case was, in effect, the suspension of the usury law of this State for the benefit of one person. It was a partial law.

In the case under consideration the State simply empowered the county to do what every person in the State had a right to do. It had nothing to do with our usury law.

It is claimed that the bonds are void because voted to one road and issued to another, the consolidation Act not being in force when the notice for the election began to run. There are a number of cases upon this question, and they all go to the point as to whether the Act authorizing the consolidation was in force at the time of voting.

A number of the cases to this effect are reviewed in *Livingston County* v. *Portsmouth Bank,* 128 U. S., 115. The voting is the act by which the authority to issue bonds is conferred, and if the consolidating Act is then in force it is sufficient. The notice has no function except to inform the voters of the time, place, and purpose of the election.

The judgment is reversed, the demurrer is overruled, and the case is remanded for further proceedings.

Judges Snodgrass and Caldwell did not concur in this conclusion.