FIDELITY TRUST & SAFETY–VAULT CO. OF LOUISVILLE v. LAW-RENCE COUNTY, TENN.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

No. 627.

STATUTES — EFFECT OF NEW CONSTITUTION — POWER OF TENNESSEE COUNTIES TO PURCHASE RAILROAD STOCK.

Const. Tenn. 1870, art. 2, § 29, contains a provision that no county or municipality shall become a stockholder with others in any corporation except after an election, and upon the assent of three-fourths of the voters participating. Article 11, § 1, continues in force all laws not inconsistent with the provisions of such constitution. Laws Tenn. 1851–52, c. 191, authorized certain counties to subscribe to the stock of railroad companies building therein upon the affirmative vote of a majority of the voters. *Held*, that the constitution of 1870 did not operate as an amendment of such statute by substituting a three-fourths for a majority vote in its requirements, but that the statute was by implication repealed by the constitution as inconsistent with its provisions, and that, it having been held that the constitutional provision was only a limitation on the powers of counties and municipalities, and not a grant of power, no authority existed in such counties, in the absence of subsequent legislation conferring it, to issue bonds for stock in a railroad company.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

This is an action at law to recover $5,800, the amount of certain coupons of a series of $50,000 of bonds issued in 1882 by Lawrence county, Tenn., to the Nashville & Florence Railroad Company, in payment of a subscription for a like amount of stock to aid in the construction of a railroad passing through the county. The defendant demurred to the declaration on the ground that it appeared therefrom that the defendant had no power to issue the bonds, coupons of which were in suit. The circuit court sustained the demurrer, and, the plaintiff not wishing to plead further, a judgment was entered for the defendant on the demurrer.

The declaration averred that the county court of Lawrence county by regular proceedings submitted to the qualified voters of the county a proposition to subscribe for $50,000 of the capital stock of the railroad company, to be paid in the bonds of the county at par, 30 years from date, bearing 6 per cent. interest, payable annually; that upon this proposition an election was held, and more than three-fourths of the votes cast were in favor of the subscription; that the subscription was made, stock was issued to the county, and bonds were issued therefor, payable to the Nashville & Florence Railroad Company, or bearer; that said company sold all of them on the market, and applied the proceeds to the construction of said railroad in Lawrence county; and that the bonds, with said coupons attached, came into the possession of plaintiff, in due course of business, for a valuable consideration. The declaration avers that the railroad company is now being operated through Lawrence county and other counties in Tennessee. The declaration makes profert of all the proceedings in the county court, avers their regularity, and alleges that for 13 years the county has recognized the bonds, paid interest upon them, and has paid $1,000 of the bonds. The legislative authority to issue the bonds is claimed by the bondholders to exist by virtue

of sections 12 to 14 of chapter 191 of the Acts of Tennessee of 1851-52. These sections are as follows:

"Sec. 12. Be it further enacted, that the respective county courts of the counties of Lawrence, Maury, Williamson and Davidson be authorized and empowered to subscribe for whatever amount of stock of any railroad company chartered to build a railroad through said counties, or either of them, or any part of either of them. the said courts may deem expedient, and to issue the bonds of the respective counties for the amount of stock so subscribed, in the manner hereinafter prescribed: provided, that neither of said county courts shall so take stock until the question of the taking of the same shall first have been submitted to the voters of the county which it is proposed shall subscribe stock, and the majority of such voters shall have decided in favor of taking the stock proposed.

"Sec. 13. Be it further enacted, that upon the application of the president of any railroad company, as aforesaid, or if the company has not been organized, of the commissioners of such company, it shall be the duty of the county court of either of the above-named counties to direct the sheriff of the said county to open and hold an election upon the proposition to take stock in such railroad company, on such day as the court shall order. The election shall be held at the usual places of holding elections in said county, and the tickets used in such elections shall have thereon the word Stock or No Stock. The returns of said election shall be made to the next term of the county court.

"Sec. 14. Be it further enacted, that whenever the majority of the voters of either of the above-named counties shall, upon the question being submitted to them, as contemplated in the previous section of this act, decide in favor of the proposition, that the county shall take stock as proposed, it shall be the duty of the county court of said county to make an order that the chairman of said court shall subscribe for the proposed amount of stock in the name of the county, and obtain the certificate therefor, and that the bonds of the county shall be issued and delivered to the said railroad company for the amount of stock so taken, which bonds shall be payable to said railroad company, shall bear interest at six per cent. per annum, payable semiannually, and shall fall due in not less than ten nor more than thirty years from date. The same shall be signed by the chairman of said court, and countersigned by the clerk thereof."

The new constitution of Tennessee, taking the place of that of 1834, was adopted May 5, 1870. Section 29 of article 2 of that constitution provided as follows:

"The general assembly shall have power to authorize the several counties and incorporated towns in this state, to impose taxes for county and corporation purposes, respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to state taxation. But the credit of no county, city or town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder, with others in any company, association or corporation, except upon a like election and the assent of a like majority."

Sections 1 and 2 of article 11 of the same constitution provide:

"Section 1. All laws and ordinances now in force and in use in this state, not inconsistent with this constitution, shall continue in force and use until they shall expire, or be altered or repealed by the legislature. But ordinances contained in any former constitution, or schedule thereto, are hereby abrogated.

"Sec. 2. Nothing contained in this constitution shall impair the validity of any debts or contracts, or affect any rights of property, or any suits, actions, rights of action, or other proceedings in courts of justice."

On January 23, 1871, the legislature passed the following act:

"Section 1. * * * 1st. That all taxable property shall be taxed according to its value, upon the principles established in regard to state taxation.

92 F.—37

"2d. The credit of no county, city or town shall be given or loaned to, or in aid of any person, company, association, or corporation, except, first, upon the consent of a majority of the justices of the peace of the county, at a quarterly term of the county court of such county, or a majority of the board of mayor and aldermen, as the case may be, of such city or town, and upon an election afterward held by the qualified voters of said county, city or town, and the assent of three-fourths of the votes cast at said election. The said county court, or board of mayor and aldermen, as the case may be, shall spread upon their records the proposition and the amount to be voted upon by the people, and shall have full power to hold and conduct such elections according to the laws regulating elections in this state; and if the assent of three-fourths of the voters of such county, city or town is had, then the county court or board of mayor and aldermen, as the case may be, shall have full power to make and execute all necessary orders, bonds and payments, in order to carry out such loan or credit voted for as prescribed in this act; nor shall any county, city or town become a stockholder with others in any company, association or corporation, except upon a like election, and the assent of a like majority, as prescribed in this act."

J. M. Dickinson and George T. Hughes, for plaintiff in error.

John J. Vertrees, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts as above). Whatever conclusion this court might have reached upon a construction of the act of 1871, were it a case of first impression, it seems now to be settled by the decision of the supreme court in Kelley v. Milan, 127 U. S. 139–154, 8 Sup. Ct. 1101, approving the decision of Mr. Justice Matthews and Judge Hammond at the circuit in Kelly v. Town of Milan, 21 Fed. 842, and of the supreme court of Tennessee in Pulaski v. Gilmore, reported in a note to the latter case, 21 Fed. 870, that the act of 1871 did not confer power to make subscriptions to the stock of railroad companies, or to issue bonds, but only regulated the mode in which such power, when conferred in other acts, should be exercised. Yielding to this view, counsel for the appellant seek to find the power to issue the bonds and coupons in suit in the act of 1852, and look only to the act of 1871 to regulate the exercise of the power in a constitutional manner. They frankly say that, unless the act of 1852 is in force, and confers the power to issue these bonds, they have no case.

The sole question, then, is whether the act of 1852 is in force. The act of 1852 gave the power to Lawrence county to subscribe for railroad stock, and to issue bonds in payment therefor, if a majority of the voters of the county voting at an election called for the purpose should vote in favor of the subscription. The constitution of 1870 provided that no county, city, or town should be given the power to loan its credit to any corporation, except upon a three-fourths affirmative vote of its qualified voters voting at an election. The legislation of 1852 was, therefore, inconsistent with the limitation upon the power of the county to accept and exercise the right to subscribe for stock and issue bonds, imposed by the constitution of 1870. Section 1 of article 11 of that constitution provided that all laws then in force and in use in the state, not inconsistent with the constitution, should continue in force until they should expire,

be altered, or repealed by the legislature. The necessary implication from the provision, and the necessary effect of the constitution, even without such a provision, must be that laws inconsistent with the constitution were abrogated and annulled. Counsel for appellant advance the idea that the effect of the constitution was not to annul the act of 1852 entirely, but only to put it in a state of suspended animation, in which it still might confer the power to issue bonds, but would remain inoperative so far as justifying its exercise until some new act should regulate the exercise of the power in accordance with the new constitution. The conception of an existing power in a county which has no right to exercise it until subsequent legislation shall confer the right is an elusive one, and difficult to apprehend. Certainly, we should not affirm it to exist in any given case unless peculiar reasons require it. No such reasons are present here. The act of 1852, prescribed as a condition precedent to the possession of power by a county to issue bonds that a majority of the voters should vote for it. The constitution of 1870 said that a county may not possess such power by legislative grant save upon a condition precedent that three-fourths of the voters shall approve it. To impose a new condition precedent without which power may not be enjoyed is to take away all power, therefore, dependent on another and less onerous condition precedent. It leaves no power existing. It destroys that, and only confers upon the legislature authority to confer new power, subject to the new condition precedent. This, in accord with the opinion of the supreme court of the United States, in the case of Norton v. Board, 129 U. S. 479, 9 Sup. Ct. 322. The town of Brownsville was authorized, by act passed February 8, 1870, by the legislature of Tennessee, to issue bonds for railroad purposes, and receive stock in exchange therefor, upon a majority vote of the electors of the town in favor of the issuing of the bonds. The new constitution requiring a three-fourths vote in such cases was adopted by the people March 26, 1870, and went into effect on the 5th day of May of the same year. The election in Brownsville was held in June, 1870, and the vote in favor of the bonds was unanimous. The court held that the inhibition imposed by section 29 of the constitution of 1870 operated directly upon the municipalities themselves, and was absolute and self-executing; and, although power was reserved to the legislature to enable them to give or loan their credit, and to become stockholders, upon the assent of three-fourths of the votes cast at an election to be held by the qualified voters, the county, city, or town was destitute of the power to do so until legislation authorizing such election and action thereupon was had. In delivering the opinion of the court, the chief justice said:

"The prohibition of the gift or loan of credit or the subscription to stock without a three-fourths vote is not an affirmative grant of authority to give or loan credit or to become a stockholder upon a three-fourths vote. Prior to the constitution of 1870, the legislature could have conferred on a municipal corporation the power to give or loan its credit, or to subscribe for stock, on such terms and conditions as the legislature chose to impose; but, after that constitution went into effect, the municipality was deprived of any power previously conferred, and could thereafter do none of these things

save by an act of legislature imparting the power as limited by the constitution."

After referring to a number of authorities, the chief justice proceeded:

"These cases sufficiently illustrate the distinction between the operation of a constitutional limitation upon the power of the legislature and of a constitutional inhibition upon the municipality itself. In the former case, past legislative action is not necessarily affected, while in the latter it is annulled. Of course, if an entirely new organic law is adopted, provision in the schedule or some other part of the instrument must be made for keeping in force all laws not inconsistent therewith, and this was furnished in this instance by the first section of article 11; but such a provision does not perpetuate any previous law enabling a municipality to do that which it is subsequently forbidden to do by the constitution. The inhibition being self-executing, and operating directly upon the municipality, and not in itself enabling the latter to proceed in accordance with the prescribed limitation, further legislation is necessary before the municipality can act."

The chief justice concluded his opinion with the statement:

"It will be perceived that we do not assent to the view that when the state government commenced under the new constitution the act of February 8, 1870, was amended by section 29 of article 2, so as to substitute a vote of three-fourths for that of a majority, and re-enacted, so to speak, by the first section of article 11, above quoted. The power of ordinary legislation is vested, under all our constitutions, in the legislatures; and the constitutional convention of Tennessee did not assume to exercise such power. The amendment of a law is usually accomplished according to a prescribed course, and there is nothing here to justify the conclusion that section 29 of article 2 was designed to operate by way of amendment to prior laws, nor can it so operate, nor the act of 1870 be held to have been kept in force, for the reasons already indicated."

Counsel for appellant concede that, if the language of the supreme court in this case is to be given its full force, it necessarily leads to the annulment of the act of 1852; but they contend that it was unnecessary for the court to decide whether the prior act in that case was absolutely annulled, or only inoperative until such an enabling act as that of 1871 was passed. We feel bound to give to the language of the supreme court its full effect, because we cannot regard the distinction which counsel seek to make a sound one. The conclusion is also supported by language of the supreme court of Tennessee in the case of Nelson v. Haywood Co., 87 Tenn. 781, 11 S. W. 885, in which the court, referring to an act similar to that under consideration in the Brownsville Case, said:

"It is claimed by the county, and it is unquestionably the law, that the constitution of 1870, which went into effect on the 5th day of May, 1870, abrogated and annulled the act of February 8, 1870, authorizing the county of Haywood to issue the bonds in question. Const. 1870, art. 2, § 29; Norton v. Commissioners, 129 U. S. 479, 9 Sup. Ct. 322; Aspinwall v. Commissioners, 22 How. 374."

It may be admitted that this statement was not necessary to the conclusion reached in the case in which it was used, but it is nevertheless very persuasive when announced by the tribunal of last resort in respect to the effect of the constitution of the state.

The judgment of the circuit court is affirmed.